ALEX B. ANDREWS v. GREAT AMERICAN INSURANCE COMPANY OF NEW YORK.

(Filed 24 November, 1943.)

**1. Trial § 27c: Evidence § 15—**

Where plaintiff's evidence is positive on the vital question involved upon his direct examination and on cross-examination ambiguous, but not diametrically opposed to that on his examination-in-chief, the defendant is not entitled, on plaintiff's evidence, to a directed verdict.

**2. Contracts § 25a: Insurance § 25d—**

> In an action to recover on an insurance policy for fire damage to an airplane, the court's charge to the jury, that the measure of damages is the difference in the reasonable market value of the airplane immediately before the fire and immediately thereafter, is erroneous, when the policy upon which the action is bottomed prescribes otherwise for the measure of recovery.

APPEAL by defendant from *Burney, J.,* at May Term, 1943, of WAKE.

This is an action to recover on an insurance policy issued by the defendant to the plaintiff for the destruction by fire of a landplane, designated as a Taylorcraft Deluxe B-12, in flight. The jury, upon appropriate issues submitted, found for their verdict that the fire which destroyed the landplane arose out of flight before collision with an object, and that the plaintiff was entitled to recover of the defendant $2,000.00, the full amount covered by the policy.

From judgment predicated on the verdict the defendant appealed, assigning error.

*Douglass & Douglass for plaintiff, appellee.*
*Murray Allen for defendant, appellant.*

SCHENCK, J. The policy of insurance involved in this action was originally issued to Alex B. Andrews and Paul F. Mickey, joint owners of the landplane, as their interests may appear, and as originally drawn insures the aircraft only against certain risks of loss or damage while not in flight. While the policy was in effect the plaintiff Andrews acquired the interest of Mickey and became the sole owner of the plane.

There was, however, attached to and made a part of the policy an endorsement, which reads: "The coverage provided by this policy is extended to cover without deductible against the risk of fire, lightning, explosion and self-ignition arising out of flight as herein defined unless such damage is caused by collision with the land, water or other object."

It is admitted in the defendant's answer that the airplane was not being used for any purpose not covered by the policy, and was within the geographical limits provided in said policy and that said plane was practically destroyed by fire. And all the evidence tends to show that the fire originated while the airplane was in flight, as that term is defined in the policy.

The plaintiff contends that under the provisions of the aforesaid endorsement he is entitled to recover for the total destruction of his airplane, since such destruction was caused by fire arising out of flight.

The defendant contends, on the contrary, that the plaintiff is not entitled to recover for the destruction of his airplane, since the fire

which burned it was caused by a collision with a high tension electric wire.

The following issue was submitted: "1. Did the fire which damaged plaintiff's landplane arise out of flight before collision with an object?" The jury answered the issue in the affirmative.

The exceptions most stressed by the defendant, appellant, are those to the refusal of the court, upon proper prayers submitted, to instruct the jury upon all the evidence to answer the issue in the negative, or that if they believed the evidence to answer the issue No. · In other words, the defendant contends that it was entitled to a directed verdict on the first issue.

It is the position of the defendant that the plaintiff's evidence fails to establish the fact that the fire which destroyed the airplane occurred before a collision with an object, a high tension electric wire, and the burden of proof being upon the plaintiff the instructions prayed for should have been given. It is the contention of the defendant that the plaintiff's own testimony on direct examination was to the effect that the fire occurred before the collision with the high tension wire, whereas his testimony on cross-examination is diametrically opposed to his direct testimony and is to the effect that the fire occurred after the collision with the high tension electric wire. If the plaintiff's testimony on cross-examination was diametrically opposed to his testimony on direct examination on the vital question as to whether the fire occurred before or after the collision with the high tension wire it might plausibly be argued that the court should instruct the jury to answer the issue in favor of the defendant, since the jury should not find for the plaintiff on an issue upon which he carried the burden when he swears to facts on direct examination making for an affirmative answer to the issue and on cross-examination swears to facts making for a negative answer thereto. It would be otherwise if there was a mere variance between the testimony on direct and on cross-examination, as distinguished from a diametrical contradiction therein on a vital question.

On direct examination the plaintiff testified that at the time the fire originated the plane had not collided with an object, and that after the fire originated the plane came in contact with a high tension wire. The plaintiff's testimony on direct examination was to the effect that the first thing he observed was "a terrific blinding, almost explosive flash, as if I had been struck by lightning or something, and then fire. That was the first thing I noticed before I noticed colliding with anything. The flash occurred and then after that I noticed I was in contact with something."

On cross-examination the plaintiff testified that a month after the accident he made a written statement for the representative of the

defendant company to the effect that "due to a headwind I was delayed in flight and . . . I thought it advisable to find a suitable place to land. It was dusk at the time, and in looking over a possible landing field, the nose of the ship severed a high-tension wire at a height of about 65 feet, which I had been unable to see. The motor and leading edges of both wings burst into flame immediately and I decided to land at once due to the fire"; that that statement "is approximately correct. It may be the cart before the horse."

We do not concur with the contention of the defendant that the testimony of the plaintiff on cross-examination was diametrically opposed to his testimony on direct examination. The plaintiff on cross-examination testifies that the written statement made by him a month after the accident out of court, when he was at home with a broken back, was "approximately correct," and that "it may be the cart before the horse." These words render his testimony susceptible to the interpretation that when he put in the written statement the words "that the nose of the ship severed the high tension wire, . . . and the motor and leading edges of both wings burst into flame immediately" it might have been more accurate to have stated that the motor and both wings burst into flame, and the nose of the ship severed the high tension wire. This would have been so if he meant to imply by the expression "the cart before the horse," that the collision was the cart and the bursting into flame was the horse. It should be borne in mind that it is the sworn testimony on cross-examination and not the written statement made out of court that is to be interpreted.

The testimony of the plaintiff on direct examination being positive to the effect that the flames appeared and then the collision with the wire occurred, and his testimony on cross-examination being at least ambiguous as to which occurred first, the flames or the collision, it cannot be held that the testimony on cross-examination was diametrically opposed to the testimony on direct examination, and thereby support the contention of the defendant that the court should have directed a negative answer to the first issue.

The second issue reads: "2. If so, what amount of damages is plaintiff entitled to recover?" On this issue the court charged the jury in effect that the measure of damages would be the difference in the reasonable market value of the airplane immediately before the fire and the reasonable market value thereof immediately after the fire. This charge is made the basis for exceptive assignments of error which appear in the record and are duly set out in appellant's brief. These assignments of error must be sustained for the reason that the insurance policy upon which this action is bottomed prescribes the measure of recovery for loss of the insured's aircraft. The provision of the policy upon this subject

is as follows: "1. Limitation of Liability and Method of Determining Same—This Company's liability for loss or damage to the aircraft described herein shall not in any event exceed the actual cash value thereof at the time any loss or damage occurs nor what it would then cost to repair or replace the aircraft or parts thereof with other of like kind and quality, nor shall it exceed:

"In the case of a total loss, the amount of insurance on the aircraft involved less depreciation at an annual rate of 20% on new aircraft (i.e., not more than three months old at the time the aircraft attached under this policy) and 15% on used aircraft. In the case of partial loss when repairs are made by the Assured, the actual cost of any parts necessary to effect repairs or replacements plus the actual cost to the Assured of labor plus 50%, without any further allowance for overhead or overtime; when the repairs are made by other than the Assured the actual cost as evidenced by bills rendered to the Assured less any discounts granted to the Assured. In no event shall the liability of this Company for partial loss exceed the amount for which this Company would be liable if the aircraft were a total loss."

There being error in the charge on the measure of damages, the defendant is entitled to a new trial, and it is so ordered.

New trial.