OWEN H. TEAGUE AND WIFE, BERTHA V. TEAGUE v.
DUKE POWER COMPANY AND HARRISON-WRIGHT COMPANY.

(Filed 27 February 1963.)

**1. Evidence § 31—**

Evidence that an agent for defendants stated upon inspecting the premises after the fire in suit that he did not know why the workman ran "hot" wires in the manner indicated into plaintiffs' house, *held* properly excluded as being testimony of a declaration by the agent after the occurrence, and therefore outside of the *res gestae.*

**2. Evidence § 49—**

Witnesses found by the court to be experts in their field may testify from hypothetical facts in evidence that wires installed in the manner indicated could not have caused fire.

**3. Same—**

Electrical experts may testify from their observation of a piece of electrical equipment taken from the scene as to what physical changes would have been apparent had it been subjected to an electrical arc and that such condition was not apparent on the equipment in evidence.

**4. Appeal and Error § 41—**

The admission of evidence over objection cannot be held prejudicial when evidence of the same import is thereafter admitted without objection.

**5. Evidence § 43—**

Where there is sufficient evidence to support a finding that the witnesses in question were experts in their field, it will be presumed that the court, before admitting their expert testimony, found that they were experts notwithstanding the absence of a specific finding to this effect, and a general objection to their testimony without specific objection to their qualifications will be considered only as to the competency of the particular question.

**6. Evidence § 42—**

The fact that the testimony of experts is in the form of a positive statement is not ground for objection when in the nature of things the statement necessarily relates to an opinion.

**7. Evidence § 49—**

The statement of a witness that contact with metal or another live wire is necessary to cause a short circuit is not objectional as opinion testimony, since the statement is not of an opinion but of a generally known fact about electricity.

**8. Appeal and Error § 4—**

Where both plaintiffs and defendants appeal from judgment in favor of defendants, defendants' appeal will not be considered when no error is found on plaintiffs' appeal, since in such instance defendants are not the parties aggrieved by the judgment. G.S. 1-271.

APPEAL by both the plaintiffs and defendants from *Olive, J.,* February 1962 Term of RANDOLPH. This appeal was docketed in the Supreme Court as Case No. 538 and argued at the Fall Term 1962.

Civil action to recover damages for the destruction of plaintiffs' home and its contents by fire allegedly caused by defendants' negligence. The jury answered the issue of negligence in favor of the defendants.

On October 5, 1958, plaintiffs were engaged in remodeling their residence on the east side of U. S. No. 220. It had been completely rewired by the Liberty Machinery Company. The two defendants, Duke Power Company and Harrison-Wright Company, acting jointly, ran a service cable from a transformer on the distribution line of the Duke Power Company on the highway and attached it to a service pole about eighty-five feet to the rear of the southeast corner of the house. The transformer had a built-in control designed "to trip the line . . . in case of a short, trouble or overload." The line to plaintiffs' house was a "three-ply roll together service," consisting of two wires insulated with rubber and one bare aluminum neutral wire which was not charged with electricity. The neutral wire was run through and wrapped about six times around a portion of a porcelain spool or insulator. It was then turned back and hooked onto a screw hook which had been attached to a rafter in the overhang of the roof at the southeast corner of the house. The porcelain insulator was attached to a bail which hooked into the screw hook, insulating the wires from the house. There was a space of from twelve to fifteen inches between the weatherboarding and the rafter. The ends of the two insulated wires were taped with a high insulating, plastic tape, folded back and taped down. The insulation tape was then covered with friction tape. From the point at which they were bent the length of these insulated wires was from twelve to eighteen inches. The end of one insulated wire was from eight to ten inches from the other and bent back underneath and to the side of the aluminum wire. According to the defendants' evidence, the wires used and the method of installing them were in general and approved use for servicing homes.

Defendants completed this installation about 3:30 p.m. on September 18, 1958. The wires were then energized so that the service men would not have to go back to the main line when they were connected with the wiring in the house. Connection could not be made until the wiring had been approved by the electrical inspector who had been notified to come. At that time, according to defendants' evidence, no part of the energized wires was dangling.

Workmen engaged in renovating the house, as well as the plaintiffs, got electricity from a cord which was plugged into a connection on a

pole at a trailer site fifty to sixty feet from the house. This cord was a regular Romax drop cord designed for inside use; it was not waterproof. From the pole to the house, it lay on the ground. It entered the house on the north side over the top of the bathroom window. Inside, according to defendants' evidence, it hung over a nail in the hall; according to plaintiffs', it was run through a loop of string which was hung from the nail. The cord had an outside connection which the cement mixer and plumbers used.

Mrs. Teague, one of the plaintiffs, testified that several times during the week preceeding October 5th she heard a beating noise on the south side of the house. On the Thursday before during a heavy rain and windstorm she went outside to see what was making the noise. She observed that two of the wires which came from the service pole were hanging down from two and a half to three feet under the roof with the ends ten to twelve feet above the ground. She saw no fire and did not suspect a fire hazard. During that week, plaintiffs had used no electrical appliances in the house and had had no fire in the stove or fireplace. On Sunday, October 5th, plaintiffs left home about 5:00 p.m. They returned about 8:00 p.m. to find the house burning to the ground.

Sometime after 7:00 p.m. Charlie Vickory, Wilbur Allen and Edgar Parsons observed the house on fire and came to the scene. Vickory testified that he observed the flames through a picture window and all the fire he could see was inside the house. Allen and Parsons testified that they saw no fire on the outside of the house until it began to break out from under the eaves on the west side. Plaintiffs' witness Batten, who lived about two hundred yards from their home, testified that his attention was first attracted by the smoke and the odor of rubber burning. At that time he saw no fire on the outside. About ten minutes later he saw the southeast corner burning.

J. S. Jones, a motorist on Highway No. 220, testified that between 5:00 and 6:00 p.m. he observed something like "an electric arc welder" on the south end of the plaintiffs' house; that it flashed a couple of times eight or ten feet above the ground; that there was some smoke and the odor of burning, but he saw no flame. Mrs. Louise Toomes testified that about 7:00 p.m., as she traveled north on the highway, she observed a small fire on the south side of the house about the height of a window but she did not think the house was on fire. T. E. Brown, an employee of Duke Power Company, came to the scene after the house had collapsed. He found the wires from the service pole on the ground and cut them.

The defendants made timely motions of nonsuit which were overruled. From a judgment entered on the verdict that plaintiffs recover

nothing of the defendants, the plaintiffs appealed, assigning errors in the admission of evidence and in the charge. Defendants also appealed, assigning as error the overruling of their motions for judgment as of nonsuit.

*L. T. Hammond and Deane F. Bell for plaintiffs.*
*James B. Lovelace for Harrison-Wright Construction Company, defendant.*
*G. E. Miller for Duke Power Company, defendant.*

SHARP, J. Plaintiffs offered the evidence of Mrs. Teague that when Mr. Brown came to cut the wire after the fire he first told her the wires from the pole to the house were not energized, but a short time later he same back to say "that those wires were hot, and he couldn't understand what the boys meant by running the wires to the house; it was a fuse job, after the wires had been completed and it has been inspected." Defendants' objection to this evidence was sustained, and its exclusion constitutes plaintiffs' first assignment of error. The evidence was clearly incompetent.

> "It is the rule with us that what an agent or employee says relative to an act presently being done by him within the scope of his agency or employment, is admissible as a part of the *res gestae*, and may be offered in evidence, either for or against the principal or employer, but what the agent or employee says afterwards, and merely narrative of a past occurrence, though his agency or employment may continue as to other matters, or generally, is only hearsay and is not competent as against the principal or employer." *Hubbard v. R.R.*, 203 N.C. 675, 166 S.E. 802.

Joseph E. Fennell, Electrical Superintendent of the Durham District of Duke Power Company was found by the court to be an expert electrical engineer. Herbert Weeks, an electrical contractor not connected with defendants, was found to be an expert in electrical power line construction. Plaintiffs' assignments of error 32 through 36 relate to the opinion evidence of these two experts. Fennell, in answer to a hypothetical question, testified that if the jury should find the installation of wires from the service pole to the plaintiffs' house to have been made in the manner defendants' evidence tended to show, in his opinion, the installation could not have caused the fire; and if, between September 18th and October 5th the two insulated wires were caused to hang downward from the neutral wire, they could not have caused the fire. He further testified that there was "no lack of safety

in a properly insulated wire." Weeks testified, in answer to a hypothetical question, that the attachment of the wires to the southeast corner of plaintiffs' residence, if made as detailed by defendants' witnesses, was safe and in keeping with the customary practice in the electrical construction business. It is noted, that on cross-examination plaintiffs did not propound a hypothetical question which assumed the facts to be as plaintiffs' evidence tended to show.

> "Persons skilled in matters relating to electricity may state inferences or judgments with respect to such matters, as, for example, whether certain electrical equipment is defective or unsafe; the proper construction of electrical equipment; whether certain construction was negligent; whether certain equipment was maintained in accordance with the standards of practice; the cause of a certain result; the effect of certain occurrences; and other matters." 32 C.J.S., Evidence, Section 530 a.

Fennell and Weeks testified as expert electricians; the evidence was competent. Assignments of error 32 through 36 are overruled. *Lynn v. Silk Mills*, 208 N.C. 7, 179 S.E. 11.

The cases cited by the defendants, in which opinion evidence as to the cause of fires or other damage to property was excluded, involved the opinions of non-expert or lay witnesses which, the Court said, were worth no more than any one else's. *Kerner v. R.R.*, 170 N.C. 94, 86 S.E. 998. In such instances, lay witnesses are not permitted to invade the prerogative of the jury. *Wood v. Insurance Co.*, 243 N.C. 158, 90 S.E. 2d 310. However, an expert in a particular field may give his opinion, based on personal observation or in answer to a properly framed hypothetical question, that a particular event or situation could or could not have produced the result in question. Stansbury, Evidence, Section 137.

Defendants' evidence tended to show that the day after the fire, H. K. Davis, District Manager of Duke Power Company; Joe F. Connor, Construction Superintendent for Harrison-Wright Construction Company; F. J. Fitts, Line Foreman for Duke Power Company; and J. C. Vuncannon, Claim Agent of Duke Power Company, went to the premises and made an investigation. About fifteen feet from the southeast corner of the house they found a piece of screw hook, a bail, and several pieces of a broken porcelain insulator. These were the same kind and type which defendants had attached to the Teague residence and were introduced in evidence as defendants' Exhibit 8.

After examining the metal hook and the four pieces of porcelain constituting defendants' Exhibit 8, Weeks testified, over objection,

that in his opinion it had not been subjected to an electrical arc or fire; that an electrical burn would have left it pitted and it would show blue marks.

W. M. Dickerson, an electrical lineman for Harrison-Wright Company also examined Exhibit 8. Without objection, he testified as follows: "That was the same kind used at the Teague place. You can tell whether or not a short has been made on that spool. You can tell by pitted marks in the metal or in the spool there will be sort of flash burn. I do not see any of that. I can tell whether an electrical burn has been made on the spool by the same way. I do not see any of that."

Over plaintiffs' objection, defendants' witness, H. K. Davis, the district manager of Duke Power Company, thirty-five years with the company, gave the same testimony.

Joe F. Connor, for sixteen years an electrical construction superintendent for Harrison-Wright Construction Company testified to the same effect — over objection on direct examination, and in answer to specific questions by plaintiffs' counsel on cross-examination. Plaintiffs' assignments of error 7 through 13 and 37 through 38 are to the admission of this evidence.

Exhibit 8 was properly introduced in evidence. The jury examined it, and it was proper for the electricians to interpret the condition for them. However, the record contains no specific finding by the judge that Davis, Dickerson, and Connor were electrical experts, and plaintiffs contend that their testimony "invaded the province of the jury."

These assignments of error cannot be sustained.

Weeks, an adjudicated expert, had given the same testimony and Dickerson's evidence went in without objection. *In re Will of Knight,* 250 N.C. 634, 109 S.E. 2d 470. Nevertheless, the rule with us is that the failure of the trial judge to specifically find that the witness is an expert before allowing him to give expert testimony will not sustain a general objection to his opinion evidence if it is in response to an otherwise competent question, and if there is evidence in the record on which the court could have based a finding that the witness had expert qualifications. In such a case, it will be assumed that the court found the witness to be an expert; otherwise, it would not have permitted him to answer the question. Stansbury, Evidence, Section 133; *State v. Coal Co.,* 210 N.C. 742, 188 S.E. 412; *Summerlin v. R.R.,* 133 N.C. 551, 45 S.E. 898; *Brewer v. Ring and Valk,* 177 N.C. 476, 486, 99 S.E. 358.

When the opinion of a witness is called for before the court has made a specific finding that he is an expert, if counsel wish to question

the witness' qualifications, they should object specifically on this ground. If they confined themselves to a general objection it will be considered as applying only to the competency of the particular question; but the rule is otherwise if there is no evidence of the witness' special knowledge or expert qualifications. *State v. Secrest*, 80 N.C. 450; *Bivings v. Gosnell*, 141 N.C. 341, 53 S.E. 861.

Plaintiffs argue that the testimony of the electricians amounted to positive statements rather than expressions of opinion. However, we think that the testimony of each was a statement of his opinion and that the jury could only have considered it as such. Some positive statements can, in the nature of things, be only expressions of opinion. A man who comes upon a piece of plank beside the ashes of a dead bonfire and says, "This piece of wood did not get in the fire," is necessarily expressing an opinion based on the present condition of the plank he then sees since he was not there at the time that the fire was burning.

Connor also testified, over objection, that contact with metal or another live wire was necessary to cause a short circuit. Plaintiffs' assignments of error 26 and 27 refer to this evidence. In giving this testimony Connor was not giving an opinion; he was merely stating a more generally known fact about electricity.

All of plaintiffs' assignments of error have been considered and plaintiffs have failed to show prejudicial error. The charge, when read contextually, fairly presents the case to the jury under the applicable principles of law. The jury found the facts in accordance with the evidence of defendants and on plaintiffs' appeal we find no error.

The defendants' appeal is dismissed. Only a party aggrieved may appeal from the Superior Court to the Supreme Court. G.S. 1-271. Since the judgment of the Superior Court in their favor remains undisturbed, defendants cannot be called parties aggrieved. *Starnes v. Tyson*, 226 N.C. 395, 38 S.E. 2d 211.

No error.