GERARD M. GUYTHER AND ROXY M. GUYTHER v. NATIONWIDE MUTUAL FIRE INSURANCE COMPANY

No. 9227SC168

(Filed 6 April 1993)

1. Insurance § 132 (NCI4th) — homeowners insurance — ambiguity — definition of collapse

The term "collapse" in a homeowners insurance policy was ambiguous where the homeowners contend that the term includes any sudden damage which materially impairs the basic structure or integrity of the building; defendant insurance company argues that the term must be given the meaning "falling, reduction to flattened form or rubble"; the policy does not define collapse; our courts have not defined the term and there is a difference of opinion in the courts of other jurisdictions; and the term is fairly and reasonably susceptible to either of the constructions asserted by the parties. In giving the ambiguous term the reasonable definition which favors plaintiffs, the term "collapse" includes the sudden material impairment of the basic structure or integrity of a building which remains standing.

Am Jur 2d, Insurance § 271.

Division of opinion among judges on same court or among other courts or jurisdictions considering same question, as evidence that particular clause of insurance policy is ambiguous. 4 ALR4th 1253.

2. **Insurance § 724 (NCI4th)— homeowners insurance—collapse of residence—sufficiency of evidence**

The trial court did not err by denying defendant's motion for a directed verdict and judgment n.o.v. where defendant claimed that the evidence failed to show that a collapse occurred to defendant's residence but the record reflects evidence that part of the house "was dropped, considerable" and one of the doors of the house would not open; the floor had fallen away from the baseboards in some sections of the house and the floor was so uneven that "you actually had to walk downhill in the hall"; the ceiling in the downstairs area of the house was bowed and "the exterior portion of the [roof] had started to push down and out instead of being just a straight flat roof"; the changes in the house on 1 April 1988 occurred suddenly; the kitchen cabinets had pulled away from the wall and the upstairs floor had dropped to the extent that "it's just like a stepoff from the balcony to the hall"; the "molding [was] split loose from the top of [plaintiffs'] ceiling in the kitchen area"; and the floor in the upstairs portion of the house "had collapsed down. . . . It was like walking downhill."

3. **Appeal and Error § 147 (NCI4th)— alleged error in instruction—failure to object at trial—right to challenge on appeal waived**

Defendant waived the right to challenge on appeal instructions on the collapse of a homeowner's roof by not objecting to the instructions at trial.

**Am Jur 2d, Appeal and Error §§ 545 et seq.**

**Sufficiency in federal court of motion in limine to preserve for appeal objection to evidence absent contemporary objection at trial. 76 ALR Fed 619.**

4. **Evidence and Witnesses § 2162 (NCI4th)— homeowners insurance—damage to house—expert witnesses—failure to tender as experts**

Two contractors properly testified as experts even though plaintiffs never formally tendered them where the trial court ruled that they were experts by implication when it permitted them to give expert testimony after hearing their qualifications.

**Am Jur 2d, Expert and Opinion Evidence §§ 60 et seq.**

5. **Evidence and Witnesses § 2372 (NCI4th)— homeowners insurance—damage to home—contractors as experts**

The trial court did not abuse its discretion by allowing expert testimony from two contractors in an action to determine liability under a homeowners insurance policy for a collapsed roof and structural damage. The record reveals that the two witnesses had been in the construction business for many years and had constructed and repaired hundreds of houses. The fact that they did not personally witness the snow which accumulated on the roof did not render their testimony inadmissible, as an expert can base opinion testimony on other than first-hand knowledge. Although one contractor testified that he was not qualified to say what caused the collapse and it was error to admit his opinion on that subject, the error was harmless in light of the other contractor's unequivocal testimony that the collapse of the house was caused by the weight of the snow.

6. **Appeal and Error § 147 (NCI4th)— instructions—failure to object at trial—request to alter instruction refused—issue preserved for appeal**

An assignment of error to instructions on damages was preserved for appeal even though defendant failed to formally object where defendant submitted a request to alter an instruction and the court refused to instruct as requested.

**Am Jur 2d, Appeal and Error §§ 545 et seq.**

**Sufficiency in federal court of motion in limine to preserve for appeal objection to evidence absent contemporary objection at trial. 76 ALR Fed 619.**

7. **Insurance § 724 (NCI4th)— homeowners policy—measure of damages**

The trial court did not err by denying defendant insurer's requested instruction on the measure of damages under a homeowner's policy in an action arising from the collapse of a roof and structural damage from accumulated snow where the policy contains a "Loss Settlement" provision which provides that the policy will pay the replacement cost for the building with certain limitations and a provision whereby the insured may disregard the replacement cost provisions and make a claim for loss or damage on an actual cash value basis;

actual cash value is not defined in the policy but is generally determined by subtracting the fair market value of the property after the damage from the fair market value of the property before the damage; defendant requested an instruction that the correct measure of damages is the difference in fair market value before and after the damage occurred; and plaintiffs sought to recover the replacement cost under the Loss Settlement section of the policy, not the actual cash value of the damage to their home. The instruction requested by defendant was not the correct measure of damages.

Appeal by defendant from judgment and order entered 5 August 1991 in Gaston County Superior Court by Judge Marcus Johnson. Heard in the Court of Appeals 13 January 1993.

*Alala Mullen Holland & Cooper, P.A., by H. Randolph Sumner and Raboteau T. Wilder, Jr., for plaintiff-appellees.*

*Stott, Hollowell, Palmer & Windham, by Grady B. Stott and Jeffrey A. Taylor, for defendant-appellant.*

GREENE, Judge.

Defendant Nationwide Mutual Fire Insurance Company (Nationwide) appeals from the trial court's order denying its motions for a directed verdict, judgment notwithstanding the verdict, and a new trial, and from the trial court's judgment in favor of plaintiffs, Gerard M. Guyther and Roxy M. Guyther (the Guythers), entered after a jury trial.

The Guythers are the owners of a house in Bessemer City which they purchased in 1986. The house is covered by a "homeowners insurance" policy issued by Nationwide. Prior to their purchase of the house, the Guythers were aware of a noticeable "dip" in the left side of the roof. A snowfall of approximately fourteen inches occurred in the area in February, 1988. On 1 April 1988, the second floor of the Guythers' house dropped by two to three inches. The Guythers submitted a claim to Nationwide for the damage to the house, which was denied. The Guythers filed a complaint on 27 October 1988, seeking to recover the cost of repairs. The complaint alleged that the roof and much of the upper structure of the Guythers' house had collapsed, causing severe damage, and that Nationwide was liable for the damage under the terms of the insurance policy it issued to the Guythers. Nation-

wide answered that the damage was not covered by the policy because the damage resulted from latent defects in the construction of the house or, in the alternative, that the collapse, if any occurred, was not covered by the policy.

The pertinent policy provisions are:

8. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

    a. Perils Insured Against in Coverage C—Personal Property. These perils apply to covered building and personal property for loss insured by this additional coverage; [Perils insured against under Coverage C include fire, lightning, windstorm, hail, explosion, etc.]

    b. hidden decay;

    c. hidden insect or vermin damage;

    d. weight of contents, equipment, animals or people;

    e. weight of rain which collects on a roof; or

    f. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

    . . . .

Collapse does not include settling, cracking, shrinking, bulging or expansion.

The case was tried before a jury on 15 July 1991. The Guythers presented their own testimony and that of Edith Lingerfelt and Marlene Strommer as to the condition of the house on 1 April 1988. This evidence showed that, as a result of the second floor dropping two to three inches, the floor sloped noticeably in several areas of the house, the ceiling in the downstairs area of the house was bowed, the floor separated from the baseboards in some places, a door in the house was wedged shut, and the kitchen cabinets pulled away from the walls. Mr. Guyther also testified that shortly after 1 April 1988, he noticed that the roof had begun to "push down and out instead of being just a straight flat roof." Two experienced contractors who had examined the house, Kendall Cribb (Cribb) and Thomas Jeffries (Jeffries), testified. Cribb presented

GUYTHER v. NATIONWIDE MUT. FIRE INS. CO.

[109 N.C. App. 506 (1993)]

opinion evidence that the damage to the house and roof was caused by the weight of snow which accumulated on the roof in the February snowstorm, and also presented an estimate of $49,669.65 for the cost of repairs. Jeffries testified that a possible cause of the damage was the weight of snow which collected on the roof and the ultimate cause was poor construction. He gave a repair estimate of $73,462.26, which he stated was the amount required to "bring [the house] up to current building codes." Nationwide moved for a directed verdict at the end of the Guythers' evidence, and also at the end of all evidence. The motion was denied.

During the jury instruction conference, Nationwide requested, in writing, that "collapse" be defined for the jury as "falling, reduction to flattened form or rubble." The trial court gave that definition as part of its instruction to the jury, but also provided several other possible definitions for "collapse," including "settling, crackling [sic], shrinking, bulging or expansion which materially impairs [the] basic structure or substantial integrity of the building."

The jury found that a "collapse" covered by the policy had occurred, and awarded damages of $52,500.00. The Guythers consented to a remittitur of the verdict to $49,669.65, and the court entered judgment for that amount. Motions by Nationwide for judgment notwithstanding the verdict and for a new trial were denied.

---

The issues presented are whether (I) the undefined term "collapse" within the meaning of an insurance policy requires the total destruction of a structure; (II) the trial court properly denied Nationwide's motions for a directed verdict and judgment notwithstanding the verdict; (III) Nationwide waived its right to challenge on appeal the trial court's instructions to the jury on the hidden decay and weight of rain provisions set forth in the policy; (IV) the trial court properly admitted the opinion testimony of Cribb and Jeffries as to the cause of the damage to the Guythers' house; and (V) the trial court erred in failing to instruct the jury that the proper measure of damages was the difference between the fair market value of the house before the damage and the fair market value of the house after the damage.

I

[1] Nationwide argues that the term "collapse" is unambiguous, and must be given the meaning "falling, reduction to flattened

GUYTHER v. NATIONWIDE MUT. FIRE INS. CO.

[109 N.C. App. 506 (1993)]

form or rubble." The Guythers contend that the term is ambiguous, and must be given the meaning more favorable to them, which would include any sudden damage which materially impairs the basic structure or integrity of the building. As our initial inquiry, therefore, we must determine what constitutes a "collapse" within the meaning of the policy.

The question of the meaning of language used in an insurance policy is a matter of law. *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). Where no definition for a term is contained in the policy, unambiguous terms will be given the meaning afforded them in ordinary speech unless the context indicates that another meaning was intended. *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978). When a term is ambiguous, in that it is susceptible to several reasonable definitions, the rule is that doubt as to which definition to accept will be resolved against the insurance company and in favor of the insured. *Maddox v. Colonial Life and Accident Ins. Co.*, 303 N.C. 648, 650, 280 S.E.2d 907, 908 (1981). The fact that a dispute has arisen between the parties as to the meaning of a term contained in a policy is some evidence that a term is ambiguous, *St. Paul Fire & Marine Ins. Co. v. Freeman-White Assocs., Inc.*, 322 N.C. 77, 83, 366 S.E.2d 480, 484 (1988), as is the fact that courts in various jurisdictions have a difference of opinion regarding what definition to give a policy term. *Thomasson v. Grain Dealers Mut. Ins. Co.*, 103 N.C. App. 475, 478, 405 S.E.2d 808, 810 (1991). Courts may use the dictionary to determine the definition of words. *Nelson v. Battle Forest Friends Meeting*, 108 N.C. App. 641, 646, 425 S.E.2d 4, 7 (1993).

The policy in question does not define "collapse," and our courts have not defined the term. The parties sharply dispute the meaning of "collapse" and there is a difference of opinion in the courts of other jurisdictions as to the proper definition to be given "collapse" when used in insurance policies. Annotation, *What Constitutes "Collapse" of a Building Within Coverage of Property Insurance Policy*, 71 A.L.R. 3d 1072 (1976). Because such evidence exists that the term is ambiguous, and because we believe the term "collapse" is fairly and reasonably susceptible to either of the constructions asserted by the parties, we deem "collapse" to be ambiguous. *See Thomasson*, 103 N.C. App. at 478, 405 S.E.2d at 810.

GUYTHER v. NATIONWIDE MUT. FIRE INS. CO.

[109 N.C. App. 506 (1993)]

Among the accepted definitions of "collapse" is "to break down completely: fall apart in confused disorganization: crumble into insignificance or nothingness." *Webster's Third New International Dictionary* 443 (1966). Another accepted definition is "to suddenly lose force . . . effectiveness, or worth." *Id.* Although both these definitions encompass the total destruction of a structure, the second definition can include less than total destruction. A building has lost its "effectiveness" or "worth" when its basic structure or integrity is materially impaired. Accordingly, in giving the ambiguous term the reasonable definition which favors the Guythers, the term "collapse" includes the sudden material impairment of the basic structure or integrity of a building which remains standing. *See Beach v. Middlesex Mut. Assurance Co.*, 532 A.2d 1297, 1300 (Conn. 1987) (collapse occurs when structural integrity of house impaired).

Nationwide contends that the above definition of the term "collapse" is in direct conflict with the provision of the policy which provides that collapse does not include "settling, cracking, shrinking, bulging or expansion." We do not agree. The policy purports to provide coverage for collapse, and may be reasonably read to exclude coverage for "settling, cracking, shrinking, bulging or expansion" only when they do not suddenly and materially impair the structure or integrity of the building. *See Government Employees Ins. Co. v. DeJames*, 261 A.2d 747, 751 (Md. 1970) (in construing insurance policy which provides coverage for collapse but excludes coverage for settling, cracking, etc., collapse encompasses settling, cracking, etc., which materially impairs structural integrity of building).

II

[2] Nationwide argues that the trial court erred in failing to grant its motion for a directed verdict and its motion for judgment notwithstanding the verdict · because the Guythers' evidence failed to show that a collapse occurred to their residence. Our task, identical to that of the trial court, is to determine if there is substantial relevant evidence in the record, in the light most favorable to the non-movant, that a reasonable mind might accept to support the non-movant's claim. *Garrett v. Overman*, 103 N.C. App. 259, 262, 404 S.E.2d 882, 883, *disc. rev. denied*, 329 N.C. 787, 408 S.E.2d 519 (1991). If such evidence exists, the motion for a directed verdict must be denied. *Id.* at 263, 404 S.E.2d at 883. Because a motion

for judgment notwithstanding the verdict is essentially a renewal, after the jury's verdict, of a motion for a directed verdict, *Penley v. Penley*, 314 N.C. 1, 10, 332 S.E.2d 51, 57 (1985), the scope of our review is the same as that for a motion for a directed verdict. *Id.*

Nationwide contends that the evidence presented does not show a collapse as that term is used in the policy and the case therefore should not have been submitted to the jury. We disagree. The record reflects the following evidence on the condition of the house: part of the house "was dropped, considerable" and one of the doors of the house would not open; the floor had fallen away from the baseboards in some sections of the house and the floor was so uneven that "you actually had to walk downhill in the hall;" the ceiling in the downstairs area of the house was bowed and "the exterior portion of the [roof] had started to push down and out instead of being just a straight flat roof;" the changes in the house on 1 April 1988, occurred suddenly; the kitchen cabinets had pulled away from the wall and the upstairs floor had dropped to the extent that "it's just like a step-off from the balcony to the hall;" the "molding [was] split loose from the top of [the Guythers'] ceiling in the kitchen area;" and the floor in the upstairs portion of the house "had collapsed down. . . . It was like walking downhill." This evidence, when considered in the light most favorable to the Guythers, is such substantial evidence that a reasonable mind might accept to support a conclusion that the Guythers' house had collapsed, as that term has been herein defined. Accordingly, Nationwide's motions for judgment notwithstanding the verdict and for a directed verdict were properly denied.

### III

[3] Nationwide contends that the trial court erred in instructing the jury that a verdict could be returned in favor of the Guythers if they determined that the collapse was caused by hidden decay or by the weight of rain which collected on the roof. Specifically, Nationwide contends that the Guythers failed to present any evidence that damage occurred due to rain or hidden decay. However, Nationwide failed to object at trial to these instructions, and has therefore waived the right to challenge them on appeal. N.C. R. App. P. 10(b)(2) (1993).

### IV

[4] Nationwide argues that the testimony of Cribb and Jeffries should have been excluded because they were not experts or other-

**GUYTHER v. NATIONWIDE MUT. FIRE INS. CO.**

[109 N.C. App. 506 (1993)]

wise qualified as lay witnesses to offer an opinion on the cause of the collapse of the house. In matters such as causation, which require skill and knowledge which is outside the ordinary experience of jurors, and about which a person of ordinary experience would not generally be capable of forming an opinion, the testimony of an expert witness who is qualified by special skill and knowledge to give an opinion is admissible. *Teague v. Duke Power Co.*, 258 N.C. 759, 763, 129 S.E.2d 507, 510 (1963). Because a lay person does not possess the technical knowledge and skill required to form an opinion concerning the cause of the collapse of a building, lay opinion testimony on the subject is not admissible. *See* N.C.G.S. § 8C, Rule 701 (1992) (lay opinion testimony must be rationally related to the witness' perception); 31A Am. Jur. 2d *Expert and Opinion Evidence* § 344 (1989) (opinion of lay witness as to causation not admissible where technical knowledge necessary to formation of opinion). Therefore, it was necessary that Cribb and Jeffries be experts in order for them to offer their opinions as to the causation of the damage to the Guythers' house.

Nationwide argues that because the Guythers never formally tendered Cribb and Jeffries as experts, their testimony must be considered that of lay witnesses, and therefore not admissible to show the cause of the damage to the house. Although these witnesses were not formally tendered nor recognized by the court as experts, the trial court by implication ruled that they were experts when, upon hearing their qualifications, the trial court permitted them to give expert testimony. *Whedon v. Whedon*, 68 N.C. App. 191, 193-94, 314 S.E.2d 794, 796 (1984), *rev'd on other grounds*, 313 N.C. 200, 328 S.E.2d 437 (1985).

[5] Nationwide nonetheless argues that Cribb and Jeffries did not possess the necessary skill and expertise to give expert testimony as to causation, and, therefore, it was error for the trial court to accept them as experts. A witness is qualified to offer expert opinion testimony if it is shown that the witness is trained, skilled or experienced in the subject area in question. *Morris Speizman Co., Inc. v. Williamson*, 12 N.C. App. 297, 304, 183 S.E.2d 248, 252, *cert. denied*, 279 N.C. 619, 184 S.E.2d 113 (1971). The decision to qualify a witness as an expert is within the discretion of the trial court, and will be reversed only if there is no evidence to support it. *State v. Parks*, 96 N.C. App. 589, 592, 386 S.E.2d 748, 750 (1989). The record reveals that Cribb and Jeffries had been in the construction business for many years and had constructed

and repaired hundreds of houses. The trial court therefore did not abuse its discretion in allowing their expert testimony. Furthermore, their testimony was not rendered inadmissible, as Nationwide suggests, by the fact that they did not personally witness the snow which accumulated on the Guythers' roof, as an expert can base opinion testimony on other than first-hand knowledge. *See State v. Purdie*, 93 N.C. App. 269, 276, 377 S.E.2d 789, 793 (1989) (expert need not testify from "first[-]hand personal knowledge"). "The fact that an expert's opinion is not based on personal observation . . . affects the *weight* to be accorded the testimony, not its admissibility." *Id.* at 277, 377 S.E.2d at 793 (emphasis in original).

We do agree with Nationwide that because Jeffries testified that he was "not qualified to say . . . what caused" the collapse, it was error to admit his opinion on the subject. This error, however, was harmless in light of Cribb's unequivocal testimony that the collapse of the house was caused by the weight of the snow.[1] *See Cook v. Southern Bonded, Inc.*, 82 N.C. App. 277, 281, 346 S.E.2d 168, 171 (1986), *disc. rev. denied*, 318 N.C. 692, 351 S.E.2d 741 (1987).

V

[6] Nationwide argues that the correct measure of damages in this case is the difference in the fair market value of the house before and after the damage occurred, and that the trial court's failure to instruct the jury accordingly was error. The Guythers contend that the trial court correctly instructed that the measure of damages was

> the reasonable cost of repair and/or replacement as necessary . . . to bring that structure back up to a condition of structural quality and general appearance at least equal to that structural quality and general appearance enjoyed by this structure or residence immediately preceding the occurrence, or the damage or loss.

In the alternative, the Guythers contend that Nationwide's failure to formally object to this instruction before the jury retired, appellate Rule 10(b)(2), precludes it from now raising the issue on appeal. No formal objection, however, is required under Rule 10(b)(2)

---

1. The policy states that coverage is provided for collapse caused by the weight of rain that collects on a roof, and does not mention the weight of snow. Nonetheless, the defendant did not raise this issue at trial and we will not address it for the first time on appeal.

GUYTHER v. NATIONWIDE MUT. FIRE INS. CO.

[109 N.C. App. 506 (1993)]

if a party submits a request to alter an instruction during the charge conference and the trial judge considers and refuses the request to alter. *Wall v. Stout*, 310 N.C. 184, 188-89, 311 S.E.2d 571, 574 (1984). The record reveals that Nationwide's attorney made the following statement to the trial judge during the jury instruction conference:

> [Nationwide's Attorney]: I contend that the measure of damages is the difference in the fair market value of this house before the [sic] April 1, 1988, and after April 1, 1988, and there's no evidence to that effect; and therefore, I'd be entitled to a peremptory instruction to the jury on the issue of damages that there has been no evidence to that effect.

The trial court refused to instruct as requested, and thus the assignment of error is preserved for appeal even though no formal objection was made by Nationwide after the judge gave his instructions to the jury.

[7] Having determined that Nationwide's objection is properly preserved, we address the issue of the propriety of the instruction requested by Nationwide. The language contained in the insurance policy controls the measure of damages upon proof of a covered loss. *Andrews v. Great American Ins. Co.*, 223 N.C. 583, 586-87, 27 S.E.2d 633, 635 (1943). The policy issued by Nationwide to the Guythers contains a "Loss Settlement" provision which provides that, with certain limitations, the policy will pay the "replacement cost" for the covered building. Replacement cost under the "Loss Settlement" provision is determined by the application of a formula set forth in the policy which limits coverage based on the relationship between the dollar amount of insurance coverage issued and the replacement cost of the building. In addition, the policy contains a provision whereby the insured may disregard the replacement cost provisions and "make a claim under this policy for loss or damage to buildings on an actual cash value basis." Although the term "actual cash value" is not defined in the policy, it is generally determined by subtracting the fair market value of the property after the damage from the fair market value of the property before the damage. *See Black's Law Dictionary* 33 (5th ed. 1981); 15 George J. Couch, *Couch Cyclopedia of Insurance Law* § 54:127 (Mark S. Rhodes ed., 2d ed. rev. vol. 1983). Thus, if the Guythers had sought to recover under the "actual cash value" provision of the policy, Nationwide's proposed instruction would

have been correct. However, the record reveals that the Guythers sought to recover not the "actual cash value" of the damage to their home but the replacement cost under the "Loss Settlement" section of the policy. The instruction requested by Nationwide was, therefore, not the correct measure of damages, and it was not error for the court to refuse to so instruct.

We have considered the other assignments of error raised by the defendant and find that they are without merit. Accordingly, we find

No error.

Judges JOHNSON and MARTIN concur.