W. P. BLACK v. ATLANTIC HOME INSURANCE COMPANY.

(Filed 30 May, 1908.)

1. **Fire Insurance—Policies—Standard Form—Additional Insurance—
   Conditions Valid.**
   The condition expressed in the statutory standard form of a
   fire insurance policy, that additional insurance upon the property
   covered by the policy without the assent of the insurer will ren-
   der the policy void, is valid and enforcible.

2. **Same—Waiver.**
   The condition expressed in the statutory standard form of a
   fire insurance policy, that "no officer, agent or other representa-
   tive of this company shall have power to waive any provision or
   condition of this policy," etc., "unless such waiver, if any, shall
   be written upon or attached hereto," does not restrict the power

of such officers, etc., to waive such condition, but establishes an invariable rule of evidence as to such waiver and renders parol evidence thereof inadmissible.

### 3. Fire Insurance—Contracts—Additional Insurance—Notice.

Notice that the insured intended to take out additional insurance in the future is not notice of existing insurance at the time of contract.

HOKE, J., dissenting *arguendo;* CLARK, C. J., concurring in the dissenting opinion.

ACTION tried before *Peebles, J.,* and a jury, at March Term, 1908, of BUNCOMBE.

Defendant insurance company, through its agents at Asheville, N. C., on 29 December, 1905, issued to plaintiff its policy of insurance against loss or damage by fire, to the amount of $1,900, on certain property, fully described therein. The policy was of the standard form set out in full in Revisal of 1905, secs. 4759, 4760, and contained the following provisions: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered, in whole or in part, by this policy." The policy contains this further clause: "This policy is made and accepted upon the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, *and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto;* and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions, *unless such waiver, if any, shall be written upon or attached hereto,* nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured, unless so written or attached." All

of which is contained in the "standard policy" prescribed in the statute. On 4 January, 1906, another policy was issued by the German Fire Insurance Company on said property for $500. On 9 January, 1906, the property covered by the policies was destroyed by fire. It was conceded that no consent by defendant was endorsed on the policy of 29 December, 1905, to the issuance of the policy of 4 January, 1906. The property, as found by the jury, was worth $3,274.

The following, among other issues, was submitted to the jury: "Was there a waiver by the defendant of the condition in the policy as to the additional insurance issued by the German Insurance Company?" Plaintiff introduced parol evidence for the purpose of showing a waiver by defendant of the condition in regard to the additional insurance.

His Honor, upon the conclusion of the evidence, charged the jury that there was no evidence that the defendant waived the provision in the policy in regard to taking out additional insurance in the German Insurance Company, and instructed them to answer the issue "No." Plaintiff excepted. Judgment was rendered for defendant, and plaintiff duly excepted and appealed.

*Zebulon Weaver* and *H. B. Carter* for plaintiff.
*Tillett & Guthrie* for defendant.

CONNOR, J., after stating the facts: The principal question presented is whether parol evidence is admissible to show a waiver of the condition avoiding the policy by reason of taking the additional insurance 4 January, 1906. The condition expressed in the policy, that other insurance taken upon the property without the assent of the insurer would render the policy void, is valid and, unless waived, will be enforced. *Sugg v. Insurance Co.,* 98 N. C., 143. The language of the contract is explicit and incapable of misunderstanding, leaving no room for construction. Assuming, for the purpose of the argument, that the agent who issued the policy comes

within the definition of a general agent, with power to bind the company in respect to the policy issued by him, as held in *Grubbs v. Insurance Co.,* 108 N. C., 472, the plaintiff is confronted with the express provision in the face of the policy, the form of which is prescribed by the statute, that no officer, agent or representative of the company shall have power to waive any provision or condition except such as by the terms of the agreement is "endorsed hereon or added hereto," and as to these no officer, agent, etc., shall have such power or be deemed or held to have waived such condition unless the waiver, if. any, shall be *"written upon or attached hereto,"* nor shall any privilege or permission exist or be claimed by the insured unless so written or attached. There can be no controversy regarding the meaning of these words. They are inserted in the policy, not by the company or by the plaintiff, but by the statute. To fail to give them force and effect is to nullify the statute. They are not intended to restrict the powers, express or implied, of general or local agents, but to prescribe an invariable rule of evidence by which their conduct must be proven to bind the company. Prior to the enactment of the statute much controversy arose as to the reasonableness of conditions or provisions inserted in policies. In many cases, by reason of the obscure language, manner and place of insertion and unfairness to the insured, the courts held them unreasonable and invalid. The conduct and language of agents, together with the extent of their power, rendered the rights and duties of the company and the insured uncertain and insecure. The courts, for the prevention of fraud and injustice, construed such provisions most strongly against the insurer, and, to prevent forfeitures, were industrious to find waivers in the conduct and language of agents. This is apparent from the decided cases in our own and the reports of other courts. To avoid these controversies, frequently resulting in long and, to the insured, ruinous litigation, the Legislatures of this and other States enacted the

"standard policy" and forbade the use of any other. The Legislature of this State in 1899 enacted a statute codifying the insurance law and adopting the "standard policy," prescribing the size of type in which it shall be printed, etc. For issuing any other form of policy the company and its agents are made indictable. Sections 4762-4833, Revisal. The courts of other States in which this form of policy is prescribed have uniformly held that its terms and provisions are binding upon the company and the insured. The question presented upon this appeal was decided in *Quinlan v. Insurance Co.,* 133 N. Y., 356, *Andrews, J.,* saying: "No principle is better settled in the law, nor is there any founded on more obvious justice, than that if a person dealing with an agent knows that he is acting under a prescribed and limited authority and his act is outside of and transcends the authority conferred, the principal is not bound, and it is immaterial whether the agent is a general or special one, because a principal may limit the authority of one as well as the other." Referring to the facts in that case, he says: "The limitations upon the authority of K. were written on the face of the policy," copying the language found in the "standard policy." Again he says: "When a policy permits an agent to exercise a specified authority, but prescribes that the company shall not be bound unless the execution of the power shall be evidenced by a written endorsement on the policy, the condition is of the essence of the authority, and the consent or act of the agent not so endorsed is void." This is a manifestly correct statement of the law. The learned Justice proceeds to point out the evils which the enactment of the standard policy was intended to avoid, saying: "The act providing for a uniform policy, known as the 'standard policy,' and which makes its use compulsory upon insurance companies, marks a most important and useful advance in legislation relating to contracts of insurance." *Moore v. H. F. Insurance Co.,* 141 N. Y., 219. In *Bourgeois v. National Insurance Co.,* 86

Wis., 606, *Winslow, J.,* referring to the enactment requiring the use of the standard policy, says: "The act is broad and sweeping in its terms and scope. It brings order out of chaos. Prior to its passage there were as many contracts as there were companies. The variations and differences between the conditions of the policies issued by the various insurance companies were almost infinite in number; new clauses and conditions were being constantly inserted, generally ingeniously worded and obscurely inserted. To meet this condition the act under consideration was passed. That it is a long step in the right direction cannot be doubted. * * * The condition here broken was one of the conditions of the standard policy. It is claimed that it was waived, not in printing or writing, but by mere word of mouth. Can this be successfully maintained? If so, then this part of the law is at once emasculated." In *Parker v. Rochester German Insurance Co.,* 162 Mass., 479, discussing an alleged waiver of a condition in a standard policy adopted by the General Assembly, it is said: "There is nothing to show that the agents had any authority to vary the standard form; but if they had it would seem probable that they could only do so by inserting provisions or attaching slips in the manner prescribed by the statute." In *Anderson v. Insurance Co.,* 28 L. R. A. (Minn.), 609, while the case was disposed of upon other grounds, the Chief Justice states clearly the principle which should govern the courts in dealing with the statutory standard policy: "But in respect to the power of the parties to insert the provisions and conditions that are contained in the standard policy, and the binding effect of them, the act is conclusive, for it would be absurd to say that, while the same statute compels the use of a particular condition, the parties cannot or shall not bind themselves by it, but it may be nugatory." "The conditions of the standard policy cannot be waived, except as provided therein and written or printed on the face of the policy." 13 Am. and Eng. Enc., 223, citing

a large number of cases.   The decisions appear to be uniform upon the point.   In *Assurance Co. v. Building Association,* 183 U. S., 308, an exhaustive description, with a review of the authorities, is made by *Mr. Justice Shiras.*   If the enforcement of this provision works injustice, the Legislature may change the law.   As it is written, it is our province to enforce it.   We have avoided any discussion of the extent and character of the authority of the agents of defendant, or what conduct will or will not operate as a waiver.   We confine our decision to the language of the statutory policy, holding, with his Honor, that there was a breach of the condition in regard to subsequent insurance, and that the waiver can· be shown only in the manner contracted between the parties, as prescribed by the statute.   The Legislature has, as a matter of public policy, restricted the freedom of contract and compelled the parties to contract in the exact language prescribed. While a contract of insurance may be made in parol, the statute will enter into and prescribe its forms—that is, the parol contract will be construed to be for a standard ·policy.   If, listening to the suggestion of "hard cases," said to be the "quicksands of the law," we nullify the statute, we not only make a new and different contract for the parties, but make the law of none effect.   The notice that the plaintiff intended to get other insurance in the future is not notice of existing insurance at the time the policy issued.   The distinction is marked and radical.   We do not think that it can be said that the agent of the company was acting as the agent of the plaintiff.   This would make confusion worse confounded.   Upon a careful review of the entire record we find no error.   The judgment must be

Affirmed.

HOKE, J., dissenting: While the conclusion reached by the Court on the specific question decided may not be in itself undesirable, I believe that the opinion proceeds upon a wrong

principle and involves an erroneous construction of the stat-
ute—a construction that may in many instances lead to un-
looked-for and harmful results.

In the decision, as I understand it, the Court holds, and
intends to hold, that there can be no waiver of any provision
or requirement of the policy by any agent, general or special,
unless the same is made in writing and attached to the policy
or written thereon, because the Legislature by statute pro-
vided a standard form for fire insurance (Revisal, secs. 4759,
4760), and it appears therein as one of the stipulations that
"no officer, agent or other representative of the company shall
have power to waive any provision or condition of the policy,
except such as by the terms of the policy may be the subject
of agreement endorsed thereon or added thereto; and as to
such provisions and conditions no officer, agent or other repre-
sentative of the company shall have such power or be deemed
to have waived such provisions or conditions, unless such
waiver, if any, shall be written upon or attached thereto, nor
shall any privilege or permission affecting the insurance under
this policy exist or be claimed by the insured unless so writ-
ten or attached."

The position maintained by the Court, it seems to me, would
have more force if the statute establishing this form was ex-
clusive in its terms, providing that no other than the form set
out should be valid and binding, but this is not at all true.
It is well known that, before the enactment of the statute by
which this form was established, some insurance companies
were accustomed to issue policies containing manifold stipu-
lations and conditions, elaborate in statement and intricate in
meaning, printed, too, usually in very fine type and being
often obscure and at times contradictory. They were difficult
to read and still more difficult to understand. As a matter of
fact, we know they were usually not read in full, and, more-
over, in case of loss these stipulations were not infrequently
made the basis of unconscionable defenses, involving both

delay and cost, and terminating at times in an entire loss—a result that was unjust and could ill be borne. While this form was enacted no doubt with the desire and intent to be just to both parties to these contracts, it was well understood to be the primary purpose of this statute to protect the insured from the untoward effects of these numerous and intricate stipulations to which I have referred.

The sections in question bear in terms upon the companies. "No fire insurance company shall issue fire insurance policies on property in this State other than those of the standard form." And as a further indication that it was the companies, and not the insured, that were brought within the effects and restrictions of the statute, it further enacts in express terms (section 4762): "Any insurance company which shall cause to be issued, and any agent who shall make, issue or deliver a policy of fire insurance other than the standard form of fire insurance policy, in willful violation of this chapter, shall be punished as by law provided, *but such policy shall nevertheless be binding upon the company issuing the same.*" This being the controlling purpose of the statute, and being only affirmative in terms, so far as the insured is concerned, it was never intended to impair or in any way affect the doctrine of waiver, as established by numerous and well-considered decisions of this and other courts of recognized authority, notably, with us, *Grabbs v. Insurance Co.,* 125 N. C., 389; *Grubbs v. Insurance Co.,* 108 N. C., 472.

This whole doctrine of waiver proceeds on the idea that it contravenes the stipulations contained in the policy. Formerly the conditions and stipulations were much more extended, and provided frequently that no stipulation of the policy could be waived by an agent at all. This was a valid provision, as a rule, and yet the courts held that it could be waived by the company, acting through its general agents. As shown in the cases cited, *supra,* these general agents, when acting within the scope of their powers, are as the company

148—12

itself, and, as they could make the contract, the statute not being prohibitory, they could alter or waive any or all of its provisions.

It is said in the opinion that the statute does not, and does not intend to, destroy this doctrine of waiver or the principles upon which it rests, but only provides a method by which alone such waiver may be established; and in the argument the case was likened to the statute which requires certain contracts concerning land to be in writing. The fallacy of the argument consists in the assumption that the statute establishes the *only* way by which waiver can be established, and the reference to the statute on contracts will illustrate the distinction I am endeavoring to state. In the statute as to land the provision is exclusive in its terms—contracts concerning land of a certain kind are void unless in writing. The statute on insurance says, in effect, to the companies: "If you place any stipulations in your contracts except those specified, you shall not take advantage of them, but any other contract of insurance you may make shall be binding on you." Accordingly, it is very generally held that companies may bind themselves in an insurance contract by parol, and, as they may do this, so they may alter or waive any or all stipulations by conduct. These same courts, whose decisions are cited and relied on to the effect that, when a standard form of policy has been established no waiver of its terms can be had except by writing made thereon or attached thereto, also hold that, if at the time of taking out a policy the agent or company knows of the existence of other insurance, the company shall be estopped from avoiding the policy or evading its obligations under it. And yet this same standard form provides "that this entire policy, unless otherwise provided by agreement, endorsed thereon or added thereto, shall be void if the insured *now has* or shall hereafter make or procure any other contract of insurance on the property covered by this insurance." Here is an express stipulation that the policy shall be void if there is

BLACK *v.* INSURANCE CO.

any other insurance existing on the property at the time and an agreement concerning it is not written on the policy itself.

If the standard policy is peremptory and exclusive, why does not it affect the one provision as well as the other? It-is to be feared that these courts have inadvertently permitted themselves to indulge to a certain extent in judicial legislation, and have determined to uphold the provision in the one case because it seems reasonable and reject it in the other because it would result in a wrong. In Vance on Insurance will be found a very full reference to these standard policies and their effect upon the rights of the parties, and on the present question the author says: "In fact, while the purpose of the standard form is to insure the making of a contract that shall be fair for both parties, it is primarily intended for the benefit of the insured, and he will not be deprived by the operation of such laws of any rights which he might otherwise have taken under a contract. Therefore, it has been held that the doctrine of waiver and estoppel applies against the insurer and in favor of the insured in the case of contracts in the standard form as well as when the form of the contract is left wholly to the discretion of the parties."

I am of opinion that the Legislature, in providing for a standard form of policy, only intended to forbid the companies from inserting any other stipulations in the contract than those contained in the former, and the statute was not intended to impair or in any way affect the principles and doctrine of waiver and estoppel as recognized and established by the law, as it has heretofore been understood and acted on.