ALLSTATE INSURANCE COMPANY v. OLD REPUBLIC INSURANCE COMPANY

No. 8026SC235

(Filed 7 October 1980)

**Insurance §§ 4.1, 127, 135— other insurance clause in fire insurance policy — inclusion in binder — no subrogation of insurer who paid in full**

A clause in defendant's standard fire insurance policy which prohibited other insurance coverage on any item covered by its policy could be given effect in a binder when no policy was ever issued and even though the binder was deemed to include all of the provisions of G.S. 58-176; therefore, the insured, who repudiated defendant's policy and obtained a policy through plaintiff, thereby violated the other insurance clause of defendant's policy and had no coverage through defendant so that plaintiff could not recover on a right of subrogation based on its full payment to the insured.

APPEAL by plaintiff from *Griffin, Judge.* Judgment entered 18 October 1979 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 11 September 1980.

Plaintiff paid $74,953.00 to the insureds for damages to their dwelling because of fire. Plaintiff brought a claim against defendant for its pro rata share of liability for the loss. Defendant moved for summary judgment, and plaintiff later made the same motion. The court granted summary judgment to defendant from which plaintiff now appeals.

The essential undisputed facts are found in the affidavits, depositions and exhibits submitted in the case. Dewey A. Watkins built a home near Midland, North Carolina, in 1974. The Federal Land Bank Association provided more than half of the financing through its Farm Credit Service and held a substan-

Insurance Co. v. Insurance Co.

tial mortgage on the house. As required by the terms of the loan, Watkins obtained homeowners' insurance from plaintiff, Allstate Insurance Company. Sometime prior to 15 August 1975, he allowed the home insurance with plaintiff to lapse due to nonpayment of premiums.

On 15 August 1975, J. Lynn Greene, assistant vice-president of the Farm Credit Service, sent the following letter to Watkins:

> We have today secured fire insurance with Old Republic Insurance Company, since Allstate has cancelled your policy effective today. If you should re-instate your coverage, please have them to send us a re-instatement notice and the above insurance will be canceled .... You will receive a billing shortly for this coverage.

Greene is the bank officer who made the loan on Watkins' house on 12 April 1974.

Watkins later received a formal notice from the land bank on 22 August 1975 again stating that a binder had been obtained to protect the bank up to the amount of $43,800.00. The notice contained information about the insurance that had been procured and reminded the insured "[i]f you plan to provide your own policy of insurance it must be received in this office within twenty (20) days."

Watkins had dealt with defendant, Old Republic Insurance Company, with respect to a disability policy which he believed it had "reneged on." For that reason, he requested Donald Zimmerman, plaintiff's agent, to come to his home so he could reapply for insurance with plaintiff. A written binder for immediate and full coverage up to $75,000.00 was completed that same day on 20 August 1975. Watkins paid a $145.00 premium. According to his deposition, while plaintiff's agent was still at the house he called Clifford Thomas, manager of the Farm Credit Service, and told him that he had gotten his own insurance. Watkins further testified that Thomas told him that the policy with Old Republic would be in effect until the bank received a copy of the policy. Plaintiff's agent testified by affidavit, on information and belief, that no policy or other written evidence of insurance coverage was ever sent to the bank.

Thomas testified in his deposition that he believed his office received letters of cancellation from Allstate concerning the Watkins' dwelling sometime in August 1975. He stated that it was standard procedure for the bank to procure insurance in such situations and charge it to the mortgagor's account. He also said that there were no written procedures to his knowledge requiring him to have a copy of another policy before he could cancel any insurance obtained by the bank. Nevertheless, he admitted he "would require something more than his [insured's] word ... I would at least like to have written documentation, a call from the insurance company he's getting it with other than just the member himself." Thomas said he had never personally talked with or received written notice from Allstate concerning reinstatement of its former coverage. Yet there was a notation in ink on a copy of the letter from Greene to Watkins that "Allstate called. Has received premium for seventy-five thousand, 8-20-75." Apparently, Phyllis Campbell, an employee at the bank, made and initialed this notation.

The Watkins' house was damaged by fire on 26 August 1975. Plaintiff paid the total amount for the loss. Plaintiff thereafter made demands upon defendant for payment of its pro rata share.

Defendant refused to make any such payments to plaintiff. J.E. Sebela, claims manager for defendant, wrote the following letter to plaintiff on 24 November 1975 explaining why:

> We believe that the notice to procure insurance dated August 15, 1975, forwarded by the Federal Land Bank Association, and received by the Federal Land Bank of Columbia on August 22, served as a valid insurance binder between the Old Republic and Watkins subject to defeasance within a 30 day period thereafter. That is to say, the Old Republic would have been responsible for any loss during that period provided Watkins did not obtain insurance from another source. In other words, that event; namely, the procurement of other insurance, nullifies the Old Republic binder and is known as a condition subsequent.

Gary Helton, underwriting manager for defendant, stated in his affidavit that defendant included a standard provision prohibiting other insurance on the insured property in all of its fire

insurance policies. He also said that permission by written endorsement for other insurance was not given in this case.

*Walker, Palmer and Miller, by James E. Walker and Robert P. Johnston, for plaintiff appellant.*

*Golding, Crews, Meekins, Gordon and Gray, by John G. Golding, for defendant appellee.*

VAUGHN, Judge.

The substantive issue is whether an insurance company may invalidate its binder coverage because the insured procured other insurance, as prohibited by the company's standard insurance policy, when no actual policy was ever issued. Plaintiff argues that termination of binder coverage in this manner violates G.S. 58-176, and therefore defendant's motion for summary judgment was erroneously granted. We do not agree.

First, it is necessary to understand the position plaintiff is taking here. Plaintiff does not deny its own coverage of the Watkins' house on the date of the fire, 26 August 1975. Rather, it contends that certain statutory provisions prevented defendant's imposition of an "other insurance" clause upon its binder, and thus defendant is liable for its pro rata share of the fire loss. In sum (and we quote), "[a]t the root of Plaintiff's theory of the case is its view that both Plaintiff and Defendant had bound coverage on the same Watkins' dwelling, and that, consequently, both parties to the lawsuit were bound by the terms of the policy provided by statute, as neither had issued policies." On the other hand, defendant denies that its coverage was in effect beyond 20 August 1975, the date plaintiff bound coverage on the property and relies exclusively on its standard policy provision:

> Unless otherwise provided in writing added hereto, other insurance covering on any item of this policy is prohibited. If, during the term of this policy, the Insured shall have any such other insurance, whether collectible or not, and unless permitted by written endorsement added hereto, the insurance under this policy, insofar as it applies to such item(s) on which other insurance exists, shall be suspended and of no effect.

Plaintiff does not dispute that this "other insurance" clause is included in all of defendant's fire insurance policies or that defendant did not allow other insurance on the house by its written endorsement. It also admits that if defendant had issued its standard policy with an endorsement prohibiting other insurance before 20 August 1975, defendant's coverage would have been invalidated.

Second, it is necessary to consider insurance binders generally. A binder is a temporary contract of insurance, consisting of the insurer's bare acknowledgment of its contract to protect the insured against a specified casualty until a formal policy can be issued. A binder does not have to be in a specific form or set forth all the terms of the contemplated policy. *Sloan v. Wells,* 296 N.C. 570, 251 S.E. 2d 449 (1979); *Wiles v. Mullinax,* 270 N.C. 661, 155 S.E. 2d 246 (1967). The statutory fire insurance provisions, however, are read into all binders whether oral or written. G.S. 58-177(4); *Mayo v. Casualty Co.,* 282 N.C. 346, 192 S.E. 2d 828 (1972). The provisions of G.S. 58-176 at lines 25-27 and 86-89, respectively, are pertinent to the instant case:

> Other Insurance. Other insurance may be prohibitied or the amount of insurance may be limited by endorsement attached hereto.

> Pro-rata liability. This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not.

At the outset, we must note that G.S. 58-176 does not prohibit the inclusion of other insurance clauses in policies written in this State. The statute clearly permits such a clause to be included in a policy by endorsement. It merely declines to make the clause a *standard* policy provision as it was formerly. *See Johnson v. Insurance Co.,* 201 N.C. 362, 160 S.E. 454 (1931); *Black v. Insurance Co.,* 148 N.C. 169, 61 S.E. 672 (1908). Thus, G.S. 58-176 does not change prior law that if a valid other insurance clause is breached, the insurer may void the entire policy. *Hiatt v. Insurance Co.,* 250 N.C. 553, 109 S.E. 2d 185 (1959); *Insurance Co. v. Indemnity Corp.,* 24 N.C. App. 538, 211 S.E. 2d 463 (1975).

What we have before us then is not a case like *Insurance Co. v. Casualty Co.,* 283 NC. 87, 194 S.E. 2d 834 (1973), where the

terms of an insurance policy conflicted with the statutory provisions deemed to be included therein. The question here is whether the clause in defendant's standard policy may be given effect in a binder when no policy was ever issued, and even though the binder is deemed to include all of the provisions of G.S. 58-176. We conclude that it may.

A binder is subject to the conditions of the policy contemplated, and generally when one accepts a binder, he accepts all the terms of the underlying insurance contract. 12 Appleman, Insurance Law and Practice § 7225 (1943 & Supp. 1980). This is true even though the policy is never issued.

> By intendment, it is subject to all the conditions in the policy to be issued. These informal writings are but incomplete and temporary contracts — memoranda given in aid of parol agreements. Such memoranda usually fix all the essential provisions that are available, but they are not ordinarily intended to include all the terms of the agreement, and always look to the formal policy that is expected subsequently to issue for a complete statement of the contract made. Hence, as heretofore stated, the contract evidenced by the binding slip is subject to all the conditions of the contemplated policy, even though it may never issue, and the same is true of other informal written contracts.

*Gardner v. Insurance Co.*, 163 N.C. 367, 371-72, 79 S.E. 806, 808 (1913) (citations omitted). There can be no question in the present case that the binder was expressly controlled by the policy. The Federal Land Bank notified Mr. Watkins by letter that it had obtained the binder from defendant on his behalf because of a lapse in insurance coverage. That letter dated 22 August 1975 included the following attached announcement:

### IMPORTANT

(1) Your rights, duties and responsibilities under the insurance contract which the bank has procured are controlled generally by the standard policy provisions and the provisions of standard forms attached thereto. It is suggested that you acquaint yourself with these provisions ....

Since defendant included a provision against additional insurance in all of its policies, its binders were also governed by the

provision. Watkins breached this condition when he obtained insurance with plaintiff, and the breach prevents any recovery from defendant under G.S. 58-176 (lines 86-89). *Sugg v. Ins. Co.,* 98 N.C. 143, 3 S.E. 732 (1887); *Burgess v. Insurance Co.,* 44 N.C. App. 441, 261 S.E. 2d 234 (1980).

It would be incongruous to say that G.S. 58-176 compelled a different conclusion. Otherwise, an insurance company would be exposed to a higher and different risk by its temporary coverage than its formal policy coverage. Sound public policy dictates that insurance companies be encouraged to provide temporary coverage through the use of binders.

> This preliminary contract is of the greatest importance, for if the applicant could not be made secure until all the formal documents were executed and delivered, the beneficial effect of the insurance system would be greatly impaired; and a clause in the State insurance law or in the charter of an insurance company providing that policies shall be executed in a certain manner does not affect the power of the insurer to make these preliminary arrangements.

*Lea v. Insurance Co.,* 168 N.C. 478, 484, 84 S.E. 813, 816 (1915) (citations omitted).

In addition, plaintiff's cause of action against defendant is based on a right of subrogation derived from its full payment to the insured. It is axiomatic that an insurance company may not be subrogated to greater rights than the insured had. The case at bar is similar to *Insurance Co. v. Insurance Association* where the Court stated: "[t]he insured can assert no right thereunder [the policy] for the reason that he abandoned the policy and procured other insurance contrary to a valid clause therein contained. It follows, therefore, that the plaintiff cannot acquire by assignment or subrogation a right from a party who had no enforceable right." 206 N.C. 95, 97, 172 S.E. 875, 877 (1934). In his deposition, Mr. Watkins makes it clear that he repudiated defendant's policy almost immediately upon learning that the bank had obtained it for him.

> I did not wish to have insurance with Old Republic and did not intend to have insurance with Old Republic. I called my Allstate agent and he came to my house. We completed the application for the policy at my house. At that time I paid

him a premium or a portion of a premium. I applied for the insurance because I wanted to be insured by Allstate and not Old Republic.

He further testified that his policy with plaintiff was reinstated on 20 August 1975 and that while plaintiff's agent was still at his house, he called the bank to notify them of his substitute coverage. Because Watkins repudiated defendant's policy and breached the prohibition against other insurance, plaintiff simply had no right to be subrogated to, which could be asserted against defendant. Therefore, defendant may not be held liable for any part of the loss occurring on 26 August 1975.

Summary judgment is a proper procedure for deciding matters of law when no material issue of fact exists. G.S. 1A-1, Rule 56. There was no genuine dispute concerning the material facts in this case. Defendant bound coverage on the Watkins' house on 15 August 1975. Defendant's standard policy prohibited other insurance on the dwelling. Watkins immediately took the necessary steps to reinstate his lapsed coverage with plaintiff on 20 August 1975. The bank was notified in some manner on the same day that he had obtained his own insurance. Defendant had no reason to issue a policy thereafter since it was clear to all parties that coverage by defendant had been intended as a temporary measure to protect the bank's interest in the house. Defendant would have issued a policy only if Watkins failed to provide acceptable insurance within 20 days. As defendant explained to plaintiff in its letter of 4 November 1975: "a policy was *not* issued in this case because it is usual practice to schedule insurance coverage only when it is apparent that the borrower is not going to provide insurance through his own insurance agent." In light of our ruling on the legal effect of a policy's other insurance provision upon its preliminary binder, *supra*, it was not error to grant defendant summary judgment. The judgment appealed from is

Affirmed.

Judges MARTIN (Robert M.) and WEBB concur.