MICHAEL G. MARKHAM AND TERRY MARKHAM GIBSON, PLAINTIFF-APPELLEES V. NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, DEFENDANT-APPELLANT V. K. J. SMITH BUILDERS & REALTY, INC., THIRD-PARTY DEFENDANT-APPELLEE

No. COA96-436

(Filed 4 March 1997)

1. **Trial § 114 (NCI4th)— insurance claim—structural collapse of house—consolidation denied—nucleus of facts— common legal issues lacking**

   The trial court did not abuse its discretion by denying defendant Nationwide Mutual Fire Insurance Company's motion to consolidate cases arising from the structural collapse of a house where there was a common nucleus of facts but few, if any, common legal issues. Consolidation would have created an extremely cumbersome case for the court to manage while unnecessarily increasing the burden on the jury.

   **Am Jur 2d, Actions § 133.**

2. **Insurance § 464 (NCI4th)— loss of house—insurance claim wrongfully denied—subrogation—right of insurer extinguished**

   It was not error for the trial court to grant summary judgment to third-party defendant Smith Builders because Nationwide Mutual Fire Insurance Company's right of subrogation was extinguished by settlement of the case between plaintiff and defendant Smith where defendant Nationwide wrongfully denied the plaintiffs' claim stemming from the loss of their home. Since Nationwide's actions forced the plaintiffs to retain counsel and independently pursue their rights against the alleged tortfeasor, common equity mandates the insurer must also accept the risk of losing its subrogation right.

   **Am Jur 2d, Insurance §§ 1810, 1813.**

   **Rights and remedies of property insurer as against third-person tortfeasor who has settled with insured. 92 ALR2d 102.**

3. **Limitations, Repose and Laches § 29 (NCI4th)— statute of limitations—structural damage to house—expert testimony as to date—directed verdict denied**

   The trial court did not err in an action arising from the structural collapse of a house by submitting the statute of limita-

tions issue to the jury where there was evidence presented that the structural damage to plaintiffs' home did not occur more than three years prior to the date the plaintiffs instituted the action.

**Am Jur 2d, Building and Construction Contracts § 114; Trial § 857.**

4. **Insurance § 724 (NCI4th)— structural collapse of home— exclusion—conflicting evidence as to cause—directed verdict denied**

It was proper for the trial court to deny defendant Nationwide Mutual Fire Insurance Company's motions for a directed verdict and judgment notwithstanding the verdict in an action arising from the structural collapse of plaintiffs' home. The policy provided coverage for the collapse of a building which has been defined to include settling which suddenly and materially impairs the integrity of the building, but expressly excluded damage caused by settling. Evidence presented at the trial indicated that the damage could have been caused by non-compensable settling; but a reasonable juror could have also inferred from the same evidence that plaintiffs' residence was rendered uninhabitable by settling "which suddenly and materially impaired the structure or integrity of the building." The meaning of ambiguous language within an insurance policy is a question of law for the court, but, when the facts and circumstances surrounding a claim remain in dispute (especially causation), it is for the jury and not the court to determine whether the ultimate cause of the claimed damages falls within the scope of the policy's exclusionary provisions as defined by the trial court.

**Am Jur 2d, Insurance § 463; Trial § 857.**

**What constitutes "collapse" of a building within coverage of property insurance policy. 71 ALR3d 1072.**

5. **Insurance § 724 (NCI4th)— latent defects exclusion— ambiguous—not effective**

The trial court did not err by submitting to the jury the issue of whether damage from the structural collapse of plaintiffs' home was excluded by a latent defects exclusion in their insurance policy where the policy was ambiguous as to the definition of latent defects and a reasonable juror could find from the conflicting evidence that the damage resulted from faulty design or

MARKHAM v. NATIONWIDE MUT. FIRE INS. CO.

[125 N.C. App. 443 (1997)]

construction, not an inherent defect in the construction materials. Any ambiguity in an insurance contract must be construed against the insurer and, absent a contrary definition in the policy, a latent defect exclusion encompasses only an inherent defect in the materials used in construction which could not be discovered by any known or customary test and does not include faulty design or construction.

**Am Jur 2d, Insurance § 463; Trial § 857.**

**What constitutes "collapse" of a building within coverage of property insurance policy. 71 ALR3d 1072.**

6. **Damages § 57 (NCI4th)— structural collapse of house— settlement with builder—no set-off for insurance company**

It cannot be said that the trial court erred in refusing to grant defendant Nationwide a $150,000 set-off against plaintiffs' $275,000 judgment in a claim arising from the structural collapse of plaintiffs' home where plaintiffs had settled with third party defendant Smith Builders, but plaintiffs' claim included damages for negligent acts occurring before 20 August 1990, the jury awarded damages only for losses suffered after 20 August 1990, and a portion of the $150,000 settlement may reasonably be viewed as compensation for damages suffered for the time period outside the scope of the award in the present case. The settlement agreement was not in the record; it was Nationwide's burden to include all pertinent information and it cannot be said on this record that the court erred by refusing to grant the credit.

**Am Jur 2d, Damages § 589; Insurance §§ 1813, 1814.**

7. **Appeal and Error § 242 (NCI4th)— surety bond—statutory—requirements**

The trial court erred by requiring Nationwide to post a $2,000 appeal bond. The plain language of N.C.G.S. § 1-285 places the amount of the surety bond in the sole discretion of the trial court with the single caveat that the amount cannot exceed $250.

**Am Jur 2d, Appellate Review § 358.**

Appeal by defendant from judgment entered 27 October 1995 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 8 January 1997.

MARKHAM v. NATIONWIDE MUT. FIRE INS. CO.

[125 N.C. App. 443 (1997)]

*Richard M. Warren and Adams, Kleemeier, Hagan, Hannah & Fouts, by James W. Bryan, for plaintiff-appellees.*

*Wilson & Iseman, L.L.P., by Urs R. Gsteiger, for defendant-appellant.*

*Carruthers & Roth, P.A., by Kenneth R. Keller and John M. Flynn, for third-party defendant-appellee.*

MARTIN, Mark D., Judge.

Defendant Nationwide Mutual Fire Insurance Company (Nationwide) appeals from jury verdict awarding plaintiffs Michael Markham and Terry Markham Gibson (Markhams)[1] $275,000 in damages for the "structural collapse" of their residence.

On 28 February 1986 the Markhams purchased a lot located at 8103 Willow Glen Trail in Guilford County, North Carolina. On 4 March 1986 the Markhams entered into a contract with third-party defendant K. J. Smith Builders & Realty (Smith Builders) for the construction of a residence on the above lot.

In or around late November 1986, Michael Markham purchased an Elite Homeowners Policy HO-3 (Elite policy) from Nationwide. The Elite policy, by its own terms, covers "structural collapse," but excludes "inherent vice; latent defect; . . . settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings."

After moving into the house, the Markhams experienced a stream of problems relating to, among other things, the walls, foundation, and footings. These problems continued until the Markhams, on 19 July 1991, abandoned their residence because it was structurally unsafe for habitation.

In or about April 1991, the Markhams filed a claim under the Elite policy which Nationwide subsequently denied. On 19 August 1993 the Markhams instituted an action against Smith Builders and K.J. Smith, individually—case no. 93 CVS 8698 (Smith case). On 20 August 1993 the Markhams instituted the present action against Nationwide alleging contractual and extra-contractual claims. On 6 December 1993 Nationwide filed a third-party complaint against Smith Builders

---

1. Although now divorced, Terry Markham Gibson and Michael Markham were married at the time of the alleged structural collapse. Therefore, we will refer to them collectively as "the Markhams."

MARKHAM v. NATIONWIDE MUT. FIRE INS. CO.

[125 N.C. App. 443 (1997)]

asserting, "if a judgment is entered for [the Markhams] for any damages alleged in their complaint, [] Nationwide have and recover of [Smith Builders] the amount of such judgment, plus costs and attorneys fees[.]"

On 25 January 1995 Nationwide made a motion to consolidate the instant case and the Smith case. The trial court denied Nationwide's motion to consolidate. On 1 February 1995 the Markhams agreed to settle the Smith case for $150,000. On 22 February 1995 the trial court granted summary judgment to Smith Builders on Nationwide's third-party subrogation claim.

After hearing all the evidence in the present case, the jury returned the following verdict:

1. Did the [Markhams'] residence structurally collapse?

[Yes.]

2. Was coverage of the damage to [the Markhams'] home excluded by the policy?

[No.]

3. Did the collapse occur after August 20, 1990?

[Yes.]

If "yes", go to Issue 4 and 5. If "no", return to the courtroom.

4. What amount of damages are the [Markhams] entitled to recover for covered damage to [their] home?

$275,000.

5. What amount of damage are the [Markhams] entitled to recover for loss of use?

$0 for Mr. Markham.

$0 for Ms. Gibson.

The above verdict was entered by the trial court on 27 October 1995. On 27 September 1995 Nationwide filed a motion for judgment notwithstanding the verdict (JNOV) and for a new trial, or, in the alternative, for a $150,000 credit on the judgment. On 13 November 1995 the trial court denied Nationwide's post-trial motions.

On appeal, Nationwide contends the trial court erred by: (1) failing to consolidate the instant case and the Smith case; (2) granting

MARKHAM v. NATIONWIDE MUT. FIRE INS. CO.

[125 N.C. App. 443 (1997)]

summary judgment to Smith Builders; (3) denying Nationwide's motions for directed verdict and JNOV; (4) failing to properly instruct the jury; (5) refusing to grant Nationwide a $150,000 credit on the judgment; and (6) ordering Nationwide to post a $2000 appeal bond.

At the outset we note Nationwide failed to cite any authority in support of its contention the trial court erroneously instructed the jury, and we, thus, decline to consider this issue. *See* N.C.R. App. P. 28(b)(5).

---

I.

**[1]** Nationwide first alleges the trial court abused its discretion by refusing to consolidate the present action with the Smith case.

N.C. Gen. Stat. § 1A-1, Rule 42(a) provides, in pertinent part, that "[w]hen actions involving a common question of law or fact are pending in one division of the court, the judge . . . <u>may</u> order all the actions consolidated . . . ." *Id.* (1990) (emphasis added). A trial court's ruling on a Rule 42 motion will not be reversed on appeal absent a manifest abuse of discretion. *In re Moore*, 11 N.C. App. 320, 322, 181 S.E.2d 118, 120 (1971). Indeed, when the trial court's failure to consolidate is assigned as error, the appellant must establish that it was injured or prejudiced. *Id.*

Admittedly, the present case and the Smith case share a common nucleus of basic facts. These two cases, however, have few, if any, common legal issues. Consolidation of the instant action and the Smith case would therefore have created an extremely cumbersome case for the trial court to manage while also unnecessarily increasing the burden on the jury. Accordingly, the trial court did not abuse its discretion by denying Nationwide's motion to consolidate.

II.

**[2]** Nationwide next contends the trial court erred by granting summary judgment to Smith Builders because Nationwide's right of subrogation was not extinguished by settlement of the Smith case.

A motion for summary judgment should be granted if, and only if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990). Such evidence must be viewed in the light most favorable to

**MARKHAM v. NATIONWIDE MUT. FIRE INS. CO.**

[125 N.C. App. 443 (1997)]

the non-moving party with all reasonable inferences also drawn in favor of the non-movant. *Whitley v. Cubberly*, 24 N.C. App. 204, 206-207, 210 S.E.2d 289, 291 (1974) " 'Irrespective of who has the burden of proof at trial . . . , upon a motion for summary judgment the burden is upon the party moving therefor to establish that there is no genuine issue of fact . . . and that he is entitled to judgment as a matter of law.' " *Id.* at 206, 210 S.E.2d at 291 (*quoting Savings & Loan Assoc. v. Trust Co.*, 282 N.C. 44, 51, 191 S.E.2d 683, 688 (1972)). The burden does not shift to the non-movant until the movant proffers sufficient evidence to "negative[] [the non-movant's] claim . . . in its entirety." *Id.*

"[I]t is a well established rule that if an insured settles with or releases a wrongdoer from liability for a loss before payment of the loss has been made by the insurance company, the insurance company's right of subrogation against the wrongdoer is thereby destroyed." *Hilley v. Insurance Co.*, 235 N.C. 544, 549, 70 S.E.2d 570, 574 (1952). *Cf. Insurance Co. v. Insurance Co.*, 49 N.C. App. 32, 38, 270 S.E.2d 510, 514 (1980) (insurer may not be subrogated to greater rights than possessed by insured). Nevertheless, a tortfeasor or wrongdoer cannot avoid the subrogation rights of an insurer by simply executing a release when, at a minimum, (a) the insurer was involved in the adjustment process, and (b) the tortfeasor or wrongdoer was on notice of the insurer's potential subrogation rights. *See Insurance Co. v. Bottling Co.*, 268 N.C. 503, 507, 151 S.E.2d 14, 17 (1966). As stated by our Supreme Court,

> " 'After the loss has been paid by the insurer, <u>or the insurance is in the process of adjustment,</u> a third person, having knowledge of the fact, cannot make settlement with insured for the loss, his liability being to insurer to the extent of the insurance paid; and if a third person makes such settlement it is no defense to a suit by insurer against him.' "

*Id.* (*quoting Insurance Co. v. Spivey*, 259 N.C. 732, 734, 131 S.E.2d 338, 340 (1963)) (emphasis added).

In the instant action, on 8 November 1993, Nationwide filed a third-party complaint against Smith Builders alleging potential subrogation rights. Smith Builders was thus on notice of Nationwide's potential subrogation rights prior to its release by the Markhams around February 1995. Therefore, Nationwide's subrogation rights were preserved if, and only if, Nationwide was engaged in the adjustment process after it denied the Markhams' claim in 1991.

MARKHAM v. NATIONWIDE MUT. FIRE INS. CO.

[125 N.C. App. 443 (1997)]

"In the law of insurance, the adjustment of a loss is the ascertainment of its amount and the ratable distribution of it among those liable to pay it." BLACK'S LAW DICTIONARY 43 (6th ed. 1990). The term adjustment "has also been defined as the settling and ascertaining of the amount of indemnity which the insured, after making all proper allowances, is entitled to receive . . . ." 44 AM JUR. 2D *Insurance* § 1674 (1982). Neither definition necessarily implies an insurer must admit liability on a claim to be involved in the adjustment process. *See id.* The above definitions do indicate, however, that an insurer which outright denies a potential claim is not involved in the adjustment process. *Cf. Sexton v. Continental Casualty Co.*, 816 P.2d 1135, 1137 (Okla. 1991); *Roberts v. Fireman's Ins. Co.*, 101 A.2d 747, 749-750 (Pa. 1954). Simply put, "[a]n insurer may not complain of its . . . loss of subrogation rights when the settlement comes after the insurer denied coverage under the policy." *Sexton*, 816 P.2d at 1138. *See also Roberts*, 101 A.2d at 749-750. To hold otherwise would result in an insured "los[ing] the true value of that contract for which he has paid his premium." *Poole v. William Penn Fire Ins. Co.*, 84 So. 2d 333, 336 (Ala. 1955). *Cf. Brandon v. Insurance Co.*, 301 N.C. 366, 370, 271 S.E.2d 380, 383 (1980) (insurer may waive any right in policy inserted for its benefit).

In the instant action, as found by the jury, Nationwide wrongfully denied the Markhams' claim under the Elite policy in 1991. On 1 February 1995, almost four years after Nationwide's denial, the Markhams settled with Smith Builders. Stated succinctly, Nationwide's actions forced the Markhams to retain counsel and independently pursue their rights against the alleged tortfeasor. Where, as here, an insurance company remains inactive when confronted with substantial evidence coverage exists, equity mandates the insurer must also accept the risk of losing its subrogation rights. *See Powers v. Calvert Fire Ins. Co.*, 57 S.E.2d 638, 642 (S.C. 1950). *See also Board of Architecture v. Lee*, 264 N.C. 602, 612, 142 S.E.2d 643, 650 (1965) ("equity protects the vigilant").

We reject Nationwide's argument that loss of their subrogation rights under the present circumstances (*i.e.*, a close question of liability under the Elite policy) is a "severe sanction" not contemplated by the law. Indeed, "[t]he remedy for the apparent dilemma lay in [Nationwide's] hands," *Powers*, 57 S.E.2d at 641, as Nationwide could have, *among other things*, instituted a declaratory judgment action to determine whether coverage existed under the Elite policy, *see Western World Ins. Co. v. Carrington*, 90 N.C. App. 520, 522, 369

S.E.2d 128, 129 (1988). In any event, allowing Nationwide to proceed with its subrogation claim under the present circumstances would, without question, undermine the public policy of encouraging voluntary settlement between tortfeasor and aggrieved party. *See Dixie Lines v. Grannick*, 238 N.C. 552, 555, 78 S.E.2d 410, 413 (1953) (out-of-court settlements are favored and encouraged by the law).

Our holding is consistent with the well established principle that "equity protects the vigilant, and not those who sleep on their rights . . . ." *Board of Architecture*, 264 N.C. at 612, 142 S.E.2d at 650. Moreover, as the legal landscape in this substantive area of the law—settlement or release between insured and tortfeasor defeats the insurer's subrogation rights—has long been settled, *see Hilley*, 235 N.C. at 549, 70 S.E.2d at 574, Nationwide cannot credibly argue their loss of potential subrogation rights constitutes a "severe sanction."

Nationwide further argues if this Court finds the release destroyed Nationwide's right to subrogation, then we must also conclude, as a matter of law, the Markhams "have violated their insurance contract, [thereby] voiding the policy." We summarily reject this argument because, in light of Nationwide's own actions, it cannot now "complain of its . . . loss of subrogation rights . . . ." *Sexton*, 816 P.2d at 1138. *See also Roberts*, 101 A.2d at 749-750.

Accordingly, the trial court did not err in granting summary judgment in favor of Smith Builders.

### III.

[3] Nationwide also alleges the trial court erred by denying its motions for directed verdict and JNOV. Specifically, Nationwide argues the Markhams' claims are barred by either (A) the statute of limitations, or (B) the settling and latent defect exclusion in the policy.

Because both a motion for directed verdict and a JNOV motion test the legal sufficiency of the evidence to go to the jury, *Everhart v. LeBrun*, 52 N.C. App. 139, 141, 277 S.E.2d 816, 818 (1981), courts apply the same standard to both motions, *Moon v. Bostian Heights Volunteer Fire Dept.*, 97 N.C. App. 110, 111, 387 S.E.2d 225, 226 (1990). In either situation, the evidence presented at trial must be considered in the light most favorable to the non-movant. *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 369, 329 S.E.2d 333, 337-338 (1985). Further, any conflicts or inconsistencies in the evidence must be resolved in favor of the non-movant. *Id.*

A.

The Elite policy states that any suit instituted under the policy must be filed "within three years after the occurrence causing loss or damage." See N.C. Gen. Stat. § 1-52 (1996). Specifically, Nationwide argues the damage to the Markhams' residence "occurred" and was discovered in 1987—more than three years prior to 20 August 1993, the date the Markhams instituted the present action.

The three-year statute of limitation imposed on claims under the Nationwide policy is, as are all such limitation periods, " 'inflexible and unyielding.' " *Blue Cross and Blue Shield v. Odell Associates*, 61 N.C. App. 350, 356, 301 S.E.2d 459, 462 (*quoting Shearin v. Lloyd*, 246 N.C. 363, 370, 98 S.E.2d 508, 514 (1957)), *disc. review denied*, 309 N.C. 319, 306 S.E.2d 791 (1983). Further, once a defendant properly pleads the statute of limitations as an affirmative defense, the burden is on the plaintiff to establish its claim is not time barred. *Burkhimer v. Gealy*, 39 N.C. App. 450, 452, 250 S.E.2d 678, 680, *disc. review denied*, 297 N.C. 298, 254 S.E.2d 918 (1979).

At trial, the Markhams presented the testimony of several expert witnesses. Our review of this expert testimony indicates, when viewed, as we must, in the light most favorable to the non-movant, *Bryant*, 313 N.C. at 369, 329 S.E.2d at 337-338, that the Markhams presented sufficient evidence the alleged "structural collapse" occurred after 20 August 1990. It necessarily follows the trial court did not err by submitting the statute of limitations issue to the jury.

B.

[4] Nationwide also contends the damage to the Markhams' residence falls within one of two exclusions in the Elite policy—the settlement exclusion or the latent defect exclusion.

As a threshold consideration, Nationwide asserts the trial court committed reversible error by submitting Issue II—Was coverage of the damage to [the Markhams'] home excluded by the [Elite] policy?—to the jury. By submitting this issue, the trial court, according to Nationwide, impermissibly "abdicated her responsibility [to interpret the meaning of certain terms in the Elite policy] and created reversible error."

Admittedly, the meaning of ambiguous language within an insurance policy is a question of law for the court. *Trust Co. v. Insurance*

*Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). Nevertheless, when, as here, the facts and circumstances surrounding a claim—especially causation—remain in dispute, it is for the jury, not the trial court, to determine whether the ultimate cause of the claimed damages falls within the scope of the policy's exclusionary provisions, as defined by the trial court. *Cf. Wilson v. Bellamy*, 105 N.C. App. 446, 464, 414 S.E.2d 347, 357 (credibility is for jury), *disc. review denied*, 331 N.C. 558, 418 S.E.2d 668 (1992); *James v. R.R.*, 236 N.C. 290, 293, 72 S.E.2d 682, 684 (1952) ("jury must [determine] what the evidence proves."); *Brinkley v. Insurance Co. and Transport Co. v. Insurance Co.*, 271 N.C. 301, 305, 156 S.E.2d 225, 228 (1967) ("functions of the jury and the judge are separate and distinct, and neither may invade the province of the other."). Therefore, as the trial court defined all applicable ambiguous language in the Elite policy during its jury charge, Nationwide's argument must fail.

1.

The Elite policy provides coverage for the collapse of a building, but expressly excludes damage caused by "settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings" (settling exclusion).

The term "collapse," when, as here, ambiguous, has been defined to include " 'settling, cracking, shrinking, bulging or expansion' [which] . . . suddenly and materially impair[s] the structure or integrity of the building," even though a policy contains a settling exclusion. *Guyther v. Nationwide Mut. Fire Ins. Co.*, 109 N.C. App. 506, 513, 428 S.E.2d 238, 242 (1993). Nationwide correctly asserts the record contains some evidence to support its proposition the Markhams' damage was caused entirely by non-compensable settling. A reasonable juror could nonetheless also conclude the expert testimony proffered by the Markhams, taken in the light most favorable to them, *Bryant*, 313 N.C. at 369, 329 S.E.2d at 337-338, establishes the Markhams' residence was rendered uninhabitable by settling which "suddenly and materially impair[ed] the structure or integrity of the building," *Guyther*, 109 N.C. App. at 513, 428 S.E.2d at 242. *Cf. Garrett v. Overman*, 103 N.C. App. 259, 262, 404 S.E.2d 882, 884, *disc. review denied*, 329 N.C. 787, 408 S.E.2d 519 (1991) (if reasonable mind may find evidence supports claim, motion for directed verdict must be denied). We therefore conclude the Markhams' claim was not, as a matter of law, barred by the settling exclusion.

MARKHAM v. NATIONWIDE MUT. FIRE INS. CO.

[125 N.C. App. 443 (1997)]

2.

**[5]** The Elite policy also excludes from the scope of coverage any damage caused by latent defects. The term "latent defect" is, however, not defined by the policy.

Nationwide argues a latent defect exclusion should embrace situations:

> where defective construction, design, or fabrication of property results in the property's failure or deterioration before its normal life, and the defect is not apparent upon reasonable inspection but only after a post-failure examination by an expert . . . .

*Carty v. American States Ins. Co.*, 9 Cal. Rptr. 2d 1, 3 (1992) (*quoting Acme Galvanizing Co. v. Fireman's Fund Ins. Co.*, 270 Cal. Rptr. 405, 410 (1990)). The Markhams', on the other hand, assert

> the great majority of the cases construing "latent defect" exclusions in policies of insurance limit the meaning of a latent defect to some inherent defect in the materials used in construction which could not be discovered by any known or customary test and do not include faulty design or construction within the meaning of this provision.

*Mattis v. State Farm Fire and Casualty Co.*, 454 N.E.2d 1156, 1162 (Ill. App. Ct. 1983) (emphasis added) (citations omitted). Coupling the lack of uniformity among other jurisdictions addressing this issue and the absence of an express definition in the Elite policy, the present latent defect exclusion is, at best, ambiguous.

In North Carolina, any ambiguity in the provisions of an insurance contract must be construed against the insurer. *See Collins & Aikman Corp. v. Hartford Accident & Indemnity Co.*, 335 N.C. 91, 97, 436 S.E.2d 243, 247 (1993). Further, as our courts are not favorably disposed toward provisions limiting the scope of coverage, exclusions are " 'to be strictly construed to provide the coverage which would otherwise be afforded by the policy.' " *Durham City Bd. of Education v. National Union Fire Ins. Co.*, 109 N.C. App. 152, 156, 426 S.E.2d 451, 453 (*quoting Maddox v. Insurance Co.*, 303 N.C. 648, 650, 280 S.E.2d 907, 908 (1981)), *disc. review denied*, 333 N.C. 790, 431 S.E.2d 22 (1993). Toward that end, we adopt, as did the trial court, the definition of latent defect enunciated in *Mattis*—a latent defect exclusion, absent a contrary definition in the policy, encompasses only an "inherent defect in the materials used in construction

which could not be discovered by any known or customary test and do[es] not include faulty design or construction . . . ." *Mattis*, 454 N.E.2d at 1162.

Even though there was evidence to the contrary, we believe, after carefully reviewing the present record in the light most favorable to the Markhams, *Bryant*, 313 N.C. at 369, 329 S.E.2d at 337-338, that a reasonable juror could find the damage to the Markhams' residence resulted from faulty design or construction, not an inherent defect in the construction materials. Thus, Nationwide was not entitled to judgment as a matter of law. *See Garrett*, 103 N.C. App. at 262, 404 S.E.2d at 884 (if reasonable mind may find evidence supports claim, motion for directed verdict must be denied).

In sum, as the record, taken in the light most favorable to the Markhams, indicates the present action was instituted within the applicable limitation period and none of the exclusions within the Nationwide policy apply to the Markhams' claim, the trial court properly denied Nationwide's motions for directed verdict and JNOV.

IV.

**[6]** We next consider whether the trial court erred by refusing to grant Nationwide a credit or set-off against the total judgment for the $150,000 the Markhams received from settling the Smith case.

As a general rule, in contract actions, " '[p]ayment of compensation . . . to plaintiff by a third party . . . against whom a claim for damages is made with respect to the same subject matter may be shown in reduction of damages for breach of contract.' " *Duke University v. St. Paul Mercury Ins. Co.*, 95 N.C. App. 663, 681, 384 S.E.2d 36, 47 (1989) (*quoting* 25 C.J.S. *Damages* § 97 (1966)). Simply put, although plaintiff is entitled to full recovery for its damages, *see Shaver v. Monroe Construction Co.*, 63 N.C. App. 605, 615, 306 S.E.2d 519, 526, *disc. review denied*, 310 N.C. 154, 311 S.E.2d 294 (1983), plaintiff is nevertheless not entitled to "double recovery" for the same loss or injury, *Holland v. Utilities Co.*, 208 N.C. 289, 292, 180 S.E. 592, 594 (1935). *See also Baity v. Brewer*, 122 N.C. App. 645, 647, 470 S.E.2d 836, 837-838 (1996); *Ryals v. Hall-Lane Moving and Storage Co.*, 122 N.C. App. 134, 141-142, 468 S.E.2d 69, 74-75 (1996). As stated by our Supreme Court, "any amount paid by anybody . . . for and on account of any injury or damage should be held for a credit on the total recovery . . . ." *Holland*, 208 N.C. at 292, 180 S.E. at 593-594.

At first blush, the $275,000 awarded in the subject action and the $150,000 settlement appear to compensate the Markhams for the same loss—destruction of their residence. Careful review of the Smith case, however, indicates the Markhams claimed damages for, among other things, allegedly negligent acts arising before 20 August 1990. The jury, here, awarded damages only for losses suffered after 20 August 1990. It naturally follows a portion of the $150,000 settlement in the Smith case may reasonably be viewed as compensation for damages suffered for the time period outside the scope of the award in the present case. Nationwide is thus not necessarily entitled to a credit of $150,000 against the instant judgment.

In any event, Nationwide failed to include the settlement agreement in the present record. *Cf. Cellu Products Co. v. G.T.E. Products Corp.*, 81 N.C. App. 474, 477-478, 344 S.E.2d 566, 568 (1986) (this Court can only "judicially know what appears of record"). In fact, the present record is devoid of any evidence from which this Court could determine what portion, if any, of the $150,000 settlement compensated the Markhams for damages incurred after 20 August 1990. Therefore, as this Court can only judicially know that which is of record, *id.*, and it was Nationwide's burden to include all pertinent information in the record, *Crowell Constructors, Inc. v. State ex rel Cobey*, 328 N.C. 563, 563, 402 S.E.2d 407, 408 (1991), we cannot say the trial court erred by refusing to grant Nationwide a $150,000 credit against the Markhams' $275,000 judgment.

V.

**[7]** Finally, Nationwide alleges the trial court erred by ordering Nationwide to post an appeal bond in the amount of $2000.

N.C. Gen. Stat. § 1-285 provides, in pertinent part:

(a) To render an appeal effectual for any purpose in a civil cause or special proceeding, a written undertaking must be executed on the part of the appellant, <u>with good and sufficient surety, in the sum of two hundred fifty dollars ($250.00), or any lesser sum as might be adjudged by the court</u> . . . .

*Id.* (1996) (emphasis added). The plain language of this statute places the amount of the surety bond in the sole discretion of the trial court with but one caveat—the surety amount cannot exceed $250. Therefore, the trial court erred by requiring Nationwide to post a $2000 surety bond before proceeding with this appeal. Accordingly,

BEAUCHESNE v. UNIVERSITY OF N.C. AT CHAPEL HILL

[125 N.C. App. 457 (1997)]

we reverse the trial court's order and remand with instruction that Nationwide be refunded $1750.

Finally, we note, after carefully reviewing the present record, that Nationwide's remaining assignments of error are without merit.

No error; remanded for correction of amount of appeal bond.

Judges LEWIS and SMITH concur.